THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEFFREY BAYLES, Defendant-Appellant.

Fifth District    No. 78-471

Opinion filed September 14, 1979.

844

JONES, P. J., dissenting.

James R. Keller, of Murphysboro, and Rich Schumacher, law student, for appellant.

James Robert Williamson, State's Attorney, of Vienna (Raymond F. Buckley and William S. Zale, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KUNCE delivered the opinion of the court:

On Saturday afternoon, October 15, 1977, defendant-appellant Jeffrey Bayles was involved in a one-car accident in Johnson County. His vehicle left the highway, rolled over several times, and came to rest on its top in a field. His fiancée was thrown from the car and killed, and the defendant, though not seriously injured, was trapped inside the vehicle. Several items which had been in the car were scattered around it on the ground. Officers of the Johnson County sheriff's department subsequently discovered marijuana inside a cloth bag and a suitcase found in the vicinity of the automobile. The defendant was charged with possession of more than 500 grams of cannabis, his motion to suppress evidence was denied, a jury found him guilty of the offense charged, and he was sentenced to 3½ years in prison.

On appeal, the defendant contends that his conviction must be reversed because it was based solely on the use of evidence obtained in violation of his constitutional rights. More specifically, the issue is whether the court below erred in ruling that the cannabis discovered in the defendant's suitcase, and inculpatory statements made by the defendant after he was confronted with the evidence against him were fruits of a legitimate "inventory search," and thus could be used by the State at trial.

At the hearing on the defendant's motion to suppress, Greg Carlock, who had been visiting his parents just down the road at the time the accident occurred, testified that he had arrived on the scene 15-20 minutes before the police or the ambulance. The defendant told Carlock that there was something valuable in the suitcase lying on the ground at the rear of the overturned vehicle, and asked Carlock to shut it, which he agreed to do. Carlock found that a sweater and a shirt were sticking out of

the corners of the suitcase keeping it from closing. He tucked the clothing inside, shut and latched the suitcase, and rolled the tumbler on the combination lock. At this point, according to Carlock, the suitcase appeared to be closed and latched. It felt as if both sides latched. He did not open the suitcase to see what was in it. To the best of his knowledge, no one else came in contact with the suitcase prior to the arrival of the police. Carlock told the defendant that he had closed the suitcase and that he would tell the sheriff to watch it because it contained something valuable. Carlock also remembered seeing at the accident scene a shaving kit, which was closed, and a cloth whiskey bag with drawstrings. From three feet away, the bag's strings appeared to be drawn shut. He had no idea of the contents of the bag. Carlock departed shortly after the defendant was removed in the ambulance and the sheriff arrived. To the best of his knowledge, at that time all three of the containers (the suitcase, the shaving kit, and the cloth bag) were closed.

James Williams, another neighbor, testified that he too arrived at the scene of the accident before the police got there. He saw a suitcase, clothing, sports equipment, and other items lying around the car on the ground. It looked to him as if "most of it just fell right out of the trunk on probably the last jolt." Williams heard Carlock tell the defendant that he had taken care of closing the suitcase. After the police officers arrived, Williams saw the sheriff look through the shaving kit and find a roll of money inside it. Williams also heard the officers talking about finding a plastic bag containing marijuana. The suitcase was open when Williams arrived at the wreck, then Carlock closed it, then it was opened again when the police were examining the contents.

Deputy Sheriff James Alsip testified that $1255 in bills had been found in and around the vehicle before he ever handled the suitcase in which he found marijuana. The sheriff told Alsip that the defendant had something valuable in the suitcase and wanted it "took care of." When Alsip first saw the suitcase, it "was probably a half an inch or three-quarters of an inch from being closed." He testified that the "main reason" for opening the suitcase was that "the sheriff has always told us that on any wreck or tow-in that we have, that we have to make an inventory of all the personal property, the items in any vehicle, to protect us and protect them so that we know what's there." Before he opened the suitcase, he thought that it might contain more money. When he did open it, he did find some money; he also discovered a plastic bag containing a small amount of marijuana, and a brown paper bag containing a "brick" of marijuana.

The deputy sheriff had seen the sheriff take the money out of the shaving kit. After the money was found, the deputy began to make his inventory. He made a list which purported to show all the articles that had

been taken from the wreck. In fact, the cloth drawstring bag, in which marijuana had been found before Alsip began to take his inventory, did not appear on the list. Alsip testified that he had "probably overlooked" writing it down. Alsip testified that the defendant did not ask him to open his suitcase; that the defendant was not under arrest at the time the inventory of his belongings was conducted; that Alsip had no reason at that time to believe that he was in danger; and that he was not looking for drugs. Defense counsel asked: "Did you search because this was an inventory or did you have some other reason?" Deputy Sheriff Alsip responded: "This is an inventory is what I was told."

Sheriff Elry Faulkner testified that he had opened and examined the contents of the cloth bag and the shaving kit before Deputy Sheriff Alsip opened the suitcase. When Faulkner found the cloth bag there was "some plastic sticking out of it." He opened the bag to "check to see what was in it" and to see "if there was anything of value in it to where I could give it back to the victim of the accident." Inside the cloth bag he found a plastic bag containing marijuana. He then opened the shaving kit, in which he found the money about which Alsip had testified. He did not remember whether or not Carlock had already told him at that time about the defendant's statement that there was something valuable in the suitcase. The suitcase "was closed from ,where I was standing." On cross-examination, asked again why he had opened the cloth bag, the sheriff responded: "Like I say, because I could see that there was a plastic bag out of it and to be perfectly honest with you if you'll check my record, I'm very suspicious of any plastic bags because that's usually what narcotics come in." He also had suspected that he might find alcoholic beverages at the scene of the accident. When asked if he was "looking through things" because he thought he might find beer, he answered in the affirmative. He had instructed his deputies to examine the contents of closed containers "If it's necessary * * * [t]o protect us."

At the preliminary hearing, which preceded the hearing on the motion to suppress, Deputy Sheriff Alsip had testified that the suitcase, which had a combination lock, was "partially closed" at the time he came to open it. It was "closed but it had been sprung in the wreck." He opened one latch and "pushed the release on it * * * it was a little hard where it had been sprung * * *." He testified that it was the sheriff's policy to make an inventory of all items at the scene of a wreck, and to open closed containers and inventory every item within them.

Sheriff Faulkner had testified at the preliminary hearing that there was "nothing on paper" concerning his inventory policy. Asked whether or not he had told his deputies to open closed containers, he answered: "I really couldn't tell you whether I have or not, it's a possibility." He said that there was no established form for making an inventory, and that a list

was usually written on a legal pad.[1] He also testified that it was his practice to open a closed container and inventory its contents "if it's not locked."

■■ ■ The protections of the fourth amendment extend wherever the subject of a search possesses a reasonable expectation of privacy. (*Katz v. United States* (1967), 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514; *People v. Nunn* (1973), 55 Ill. 2d 344, 304 N.E.2d 81, *cert. denied* (1974), 416 U.S. 904, 40 L. Ed. 2d 108, 94 S. Ct. 1608; *People v. Sanders* (1976), 44 Ill. App. 3d 510, 358 N.E.2d 375.) Searches which are conducted without prior judicial approval, like the one in the instant case, are considered *per se* unreasonable under the fourth amendment, subject only to a few "specifically established and well-delineated exceptions." (*Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514.) One of the established exceptions to the requirement that officials obtain a warrant before conducting a search is the so-called "inventory search." (See *South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092; *People v. Clark* (1976), 65 Ill. 2d 169, 357 N.E.2d 798; *People v. Hamilton* (1979), 74 Ill. 2d 457, 386 N.E.2d 53.) It is this exception upon which the State relied, and the court ruled, in the case now before us. A review of the cited cases reveals that the extent of the application of the inventory-search exception has not yet been precisely delineated.

In the *Opperman* case, the defendant's car was impounded because of parking violations. Following their standard procedures in such cases, the city police conducted an inventory of the contents of the vehicle. In the process, marijuana contained in a plastic bag was found in the unlocked glove compartment of the car. The plurality opinion of the United States Supreme Court held that where there was no suggestion that the inventory was a pretext to conceal investigatory police motives, such an inventory procedure was not unreasonable under the fourth amendment. In *People v. Clark*, which, like *Opperman*, involved evidence found in the glove compartment of an impounded automobile, the Illinois Supreme Court likewise found "no hint whatever of any improper [investigatory] motive * * * on the part of the arresting officer." (65 Ill. 2d 169, 175, 357 N.E.2d 798, 801.) *Clark* established that the inventory-search exception to section 6 of article 1 of the Illinois Constitution is co-extensive with that exception to the fourth amendment of the Federal Constitution. The court pointed out that the Supreme Court had not yet squarely decided the question raised by the instant case: whether "an inventory exception applies to evidence seized as the result of an inventory of luggage or other containers taken from an

---

[1] The record reveals that Deputy Alsip's list was made on a form headed "I.B.I. Evidence Log."

automobile in the course of an inventory of the vehicle." 74 Ill. 2d 457, 467, 386 N.E.2d 53, 58.

The Supreme Court has now decided a case, subsequent to *Hamilton* and the briefs and oral arguments in this case, which though perhaps not determinative, strongly suggests how the majority of the court would answer the question left unresolved by the plurality in *Opperman*.[2] In *Arkansas v. Sanders* (1979), ___ U.S. ___, 61 L. Ed. 2d 235, 99 S. Ct. 2586, the court decided that, absent exigent circumstances (such as a reason to suspect the presence of a weapon), police are required to obtain a warrant before searching an unlocked suitcase taken from an automobile, even where the automobile itself had been properly stopped and searched for contraband upon probable cause. The court held that "the extent to which the Fourth Amendment applies to containers and other parcels depends not at all upon whether they are seized from an automobile." (___ U.S. ___, ___ n. 13, 61 L. Ed. 2d 235, 245 n. 13, 99 S. Ct. 2586, 2593-94 n. 13.) Elaborating on *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476, the court stated: "A lawful search of luggage generally may be performed only pursuant to a warrant. * * * [L]uggage is a common repository for one's personal effects, and therefore is inevitably associated with the expectation of privacy." (___ U.S. ___, ___, 61 L. Ed. 2d 235, 244, 99 S. Ct. 2586, 2592.) The fact that the suitcase was unlocked did not "alter its fundamental character as a repository for personal, private effects." (___ U.S. ___, ___ n. 9, 61 L. Ed. 2d 235, 244 n. 9, 99 S. Ct. 2586, 2592 n. 9.) The court in *Sanders* expressly distinguished the situation before it from that in previous decisions including *Opperman*, which involved searches of some integral part of the automobile, concluding:

"* * * [A]s a general rule there is no greater need for warrantless searches of luggage taken from automobiles than of luggage taken from other places.

Similarly, a suitcase taken from an automobile stopped on the highway is not necessarily attended by any lesser expectation of privacy than is associated with luggage taken from other locations. One is not less inclined to place private, personal possessions in a

---

[2] Although *Arkansas v. Sanders*, discussed in the text, did not involve an inventory search, we think it clear that a majority of the Supreme Court would extend its reasoning to an inventory search. The author of the majority opinion in *Sanders* was Mr. Justice Powell; concurring in *Opperman*, he emphasized that that case did not stand for the proposition that police had a general license to examine the contents of luggage taken from an automobile in the course of an inventory. (428 U.S. 364, 380 and n. 7, 49 L. Ed. 2d 1000, 1011-12 and n. 7, 96 S. Ct. 3092, 3102 and n. 7.) Dissenting in *Opperman*, Mr. Justice Marshall (joined by Justices Brennan, Stewart, and White) also noted expressly that the court's opinion "does not authorize the inspection of suitcases, boxes, or other containers which might themselves be sealed, removed, and secured without further intrusion." 428 U.S. 364, 388 n. 6, 49 L. Ed. 2d 1000, 1016-17 n. 6, 96 S. Ct. 3092, 3106-07 n. 6.

suitcase merely because the suitcase is to be carried in an automobile rather than transported by other means or temporarily checked or stored. Indeed, the very purpose of a suitcase is to serve as a repository for personal items when one wishes to transport them. Accordingly, the reasons for not requiring a warrant for the search of an automobile do not apply to searches of personal luggage taken by police from automobiles. * * *'' ___ U.S. ___, ___, 61 L. Ed. 2d 235, 245-46, 99 S. Ct. 2586, 2593-94.

The court expressly rejected the State's argument, based on *Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975, that if the police were entitled to seize the suitcase, then they were entitled to search it:

"We view * * * the seizure of a suitcase as quite different from the seizure of an automobile. In *Chambers*, if the Court had required seizure and holding of the vehicle, it would have imposed a constitutional requirement upon police departments of all sizes around the country to have available the people and equipment necessary to transport impounded automobiles to some central location until warrants could be secured. Moreover, once seized automobiles were taken from the highway the police would be responsible for providing some appropriate location where they could be kept, with due regard to the safety of the vehicles and their contents, until a magistrate ruled on the application for a warrant. Such a constitutional requirement therefore would have imposed severe, even impossible, burdens on many police departments. [Citation.] No comparable burdens are likely to exist with respect to the seizure of personal luggage." ___ U.S. ___, ___ n. 14, 61 L. Ed. 2d 235, 246 n. 14, 99 S. Ct. 2586, 2594 n. 14.

In *People v. Hamilton*, the Illinois Supreme Court pointed out that an inventory of an automobile is not the same as the other kinds of warrantless searches of an automobile which have been found consistent with the fourth amendment. It is justified rather by "protection of police officers from potential danger; protection of the owner's property while his car is in police custody; and protection against claims that the property has been lost or stolen." (74 Ill. 2d 457, 465, 386 N.E.2d 53, 57, paraphrasing *Opperman* and *Clark*.) The court elaborated:

"Unlike the 'automobile exception,' an inventory of a person's automobile need not be based on any belief of probable cause by the officer, nor is it necessary that it be made in conjunction with a lawful arrest. An inventory does not in the true sense constitute a search for evidence, but is a mere listing of items of property which have come into the possession of the officer.
* * *

Though discussing the State's contention that this was a seizure of evidence during an inventory, we do not imply by that discussion that such inventories may be made of the contents of any and all containers which may come into the custody of the police. In fact, just the opposite is true. The inventory exception to the search warrant requirement has primarily been applied to motor vehicles (*Opperman; Clark*). The inventory exception is of rather recent origin and is supported by reasons entirely different from those which support the warrantless search of an automobile under the 'automobile exception,' where there must be a showing of probable cause. The reasons for an inventory search also differ from the reasons which support the search of an automobile as incident to a lawful arrest. (Sikma, *Collateral Search: A Survey of Exceptions to the Warrant Requirement*, 21 S.D. L. Rev. 254 (1976).)

* * *

While the Supreme Court in *Chadwick* [*United States v. Chadwick* (1977), 433 U.S. 1, 97 S. Ct. 2476, 53 L. Ed. 2d 538] did not deal with an inventory search of personal luggage, that question was decided by the court of appeals when it decided *Chadwick*, and review of its decision on that point was not sought. 433 U.S. 1, 5 n. 1, 53 L. Ed. 2d 538, 544 n. 1, 97 S. Ct. 2476, 2480 n. 1.

The Court of Appeals for the First Circuit, when considering the inventory search of two locked suitcases in *Chadwick* stated:

'We see an inventory as occupying a middle ground between a criminal investigatory search, which must comply strictly with warrant and probable cause standards, and those actions which fall totally outside the fourth amendment * * * [A]n inventory may be initiated and carried on upon a less formal basis than a criminal search and will be upheld so long as it serves a proper governmental purpose and does not amount to an excessive intrusion. * * * We intimate no judgment as to the propriety of inventorying unlocked suitcases, nor even locked ones given sufficient reasons, such as suspicion that there may be explosives inside. But breaking open the two locked suitcases here was an unreasonable intrusion that exceeded any proper governmental interest shown to exist. * * * [T]o protect the agents from later claims, the suitcases could have been sealed with tape which the agents could have initialled, or placed in a locked storeroom with the keys kept in an envelope along with other personal

property of defendants. Forcing the locks served no apparent purpose other than to satisfy the agent's curiosity.' *United States v. Chadwick* (1st Cir. 1976), 532 F.2d 773, 783-84.

Considering the validity of the alleged inventory of the defendant's briefcase, we note, as did the court of appeals in *Chadwick*, that we intimate no judgment as to the propriety of inventorying personal luggage given sufficient reasons, such as suspicion that there might be explosives inside. However, under the facts presented here, testing the reason for the inventory by the threefold test of *Opperman* and *Clark*, there exists no justification for the intrusion into the defendant's briefcase." 74 Ill. 2d 457, 464-69, 386 N.E.2d 53, 56-58.

It is settled that the burden is on those seeking an exemption from the requirements of the fourth amendment to show the need for it. *Arkansas v. Sanders* (1979), ___ U.S. ___, 61 L. Ed. 2d 235, 99 S. Ct. 2586, and cases cited therein.

The State would distinguish the instant case from *Hamilton* and other cases from other jurisdictions cited by the defendant on the following bases:

1. The opening of the briefcase in *Hamilton*, by the officer's own testimony, was not for the purpose of inventorying its contents. Here, the suitcase was searched along with the rest of the defendant's belongings in order to ascertain what items of value were being taken into police custody.

2. The defendant in *Hamilton* manifested an expectation of privacy in the contents of his briefcase by locking it with a key and taking it with him to the hospital. Here, "[a]fter defendant had been removed from his car, the record does not show that he requested that any of his belongings be taken with him to the hospital or that he otherwise manifested any expectation of privacy."

3. *Hamilton* and the other cited cases (*e.g., Mozzetti v. Superior Court of Sacramento County* (1971), 4 Cal. 3d 699, 484 P.2d 84, 94 Cal. Rptr. 412) "did not involve situations where apparently valuable property had been subjected to loss, theft, or damage prior to the arrival of the police." Here, the police knew that the defendant had told Carlock that there was something of value in the suitcase, which had been thrown out of the car and opened as a result of the wreck.

■■ We will respond to these contentions in the order presented. First, just as did the court in *Hamilton*, we find that the facts here, as developed at the hearing on the motion to suppress, "cast serious doubt on the contention that the discovery by the officer was in any way related to an

inventory * * *." (74 Ill. 2d 457, 466, 386 N.E.2d 53, 57.) By Sheriff Faulkner's own testimony, fairly construed, he began looking through the defendant's effects at least partly because he suspected that he might find alcohol or narcotics, not simply to make an inventory. Further, it is undisputed that by the time Deputy Alsip opened the suitcase, the officers already had found some marijuana among the defendant's possessions. We cannot say, with the courts in *Opperman* and *Clark*, that there is no hint or suggestion of an investigatory motive on the part of the police conducting the search.

The State's second contention has been fully answered by the Supreme Court in *Arkansas v. Sanders*. A person possesses a reasonable expectation of privacy when he places items in his personal luggage, whether locked or unlocked. No further overt manifestation of this expectation is required. Here, of course, the defendant asked Carlock to close his suitcase. Like the defendant in *Hamilton*, "to the best of his ability he sought to safeguard [his] privacy." 74 Ill. 2d 457, 469, 386 N.E.2d 53, 59.

■■ Finally, we do not consider that the intrusion here can be justified as necessary because the suitcase was lying on the ground outside of the car, with its latch apparently sprung, when the police arrived. Without undue burden upon the officers, the suitcase could have been protected from loss or theft, and later claims of theft, by simply sealing it with tape in the presence of witnesses and placing it in a locker or storeroom with the other inventoried items. *People v. Hamilton* (1979), 74 Ill. 2d 457, 469, 386 N.E.2d 53, 59; *United States v. Chadwick* (1st Cir. 1976), 532 F.2d 773; *Arkansas v. Sanders*, (1979), ___ U.S. ___ n. 14, 61 L. Ed. 2d 235, 246 n. 14, 99 S. Ct. 2586, 2594 n. 14.

In holding that no proper governmental purpose was served by the search inside the defendant's suitcase, and that therefore the intrusion was unreasonable under the fourth amendment, we do not intend to attribute any evil motives to the police officers involved, nor to suggest that it was anything but commendable for them to attempt to make a list of the items found at the site of the accident. We merely hold that the search exceeded the permissible scope of such procedures consistent with the fourth amendment. The fourth amendment "governs all intrusions by agents of the public upon personal security" and requires making "the scope of the particular intrusion, in light of all the exigencies of the case, a central element in the analysis of reasonableness." (*Terry v. Ohio* (1968), 392 U.S. 1, 18 n. 15, 20 L. Ed. 2d 889, 904 n. 15, 88 S. Ct. 1868, 1878 n. 15.) On this record, there was no reasonable need for the officers to do more than secure the closed containers found at the scene of the accident; therefore, opening the containers and examining their contents, regardless of the officers' motives, was unreasonable.

Because the only justification presented to the court below for the warrantless intrusions into the closed containers belonging to the defendant was that they were done pursuant to an inventory, the motion to suppress the cannabis and the defendant's statements from evidence should have been granted.[3] As the defendant could not have been convicted without that evidence, we reverse his conviction outright.

For the foregoing reasons, the judgment of the Circuit Court of Johnson County is reversed.

Reversed.

MORAN, J., concurs.

Mr. PRESIDING JUSTICE JONES, dissenting:

The very first sentence of the majority opinion in *Arkansas v. Sanders* reads:

> "This case presents the question whether, *in the absence of exigent circumstances*, police are required to obtain a warrant before searching luggage taken from an automobile properly stopped and searched for contraband." (Emphasis added.) (___ U.S. ___, ___, 61 L. Ed. 2d 235, 238, 99 S. Ct. 2586, 2588.)

The circumstances from which this case arose show the presence of exigent circumstances. Consequently, by following *Arkansas v. Sanders* the majority has reached what I believe to be an erroneous result. Likewise, there is nothing in the Illinois case of *People v. Hamilton* that compels the majority conclusion. Accordingly, I respectfully dissent.

When police officers arrived on the scene of the accident, the roadside of a public highway, they found one person dead and another, the defendant, injured and about to be removed to the hospital. How

---

[3] No contention has been made, either here or in the trial court, that the search of the suitcase (or the search of the cloth drawstring bag) was justified because the cannabis was in plain view. Nor, we think, would the record support such a contention. Had the sheriff seen the cannabis sticking out of the cloth bag in plain view (rather than just a piece of plastic) he would doubtless then have had probable cause to arrest the defendant and to seize the rest of the defendant's effects at the accident scene. Nevertheless, under *Arkansas v. Sanders*, he would still have been required to obtain a search warrant before searching inside the defendant's suitcase.

Neither do we consider the cloth whiskey bag here one of those containers hypothesized in *Sanders* which "by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." (___ U.S. ___, ___ n. 13, 61 L. Ed. 2d 235, 245 n. 13, 99 S. Ct. 2586, 2593 n. 13.) The sheriff testified that he opened it to see what was in it because his suspicions were aroused by plastic bags.

At trial, the State did not seek to introduce into evidence the cannabis discovered inside the cloth bag.

serious defendant's injuries were the officers could not know. The automobile involved was a wreck and debris was scattered about. At this stage the officers were duty bound to investigate, render whatever assistance might be required and stabilize the situation as quickly as possible. What measures for protection of property were necessary? They did not know. Defendant told Carlock there was something valuable in the suitcase, yet the unmentioned shaving kit contained $1255 in a roll of bills. The defendant's statement regarding the valuable contents, otherwise unspecified, presumably was passed to the sheriff by bystanders Carlock and Williams since Deputy Alsip testified the sheriff told him of defendant's concern for the contents of the suitcase before he opened it but after finding the roll of bills.

In my opinion these circumstances present a great exigency indeed, and not only was the officers' search of the suitcase proper, they would have been derelict in their duty had they failed to make it. Seizure alone without opening for examination would not suffice. While the presence of probable cause to open the suitcase is seriously questionable, it cannot be questioned that opening was required to determine the nature of the "valuable" contents to see precisely what must be done to preserve and secure them. If $1255 in bills in the shaving kit was not worth mentioning then the suitcase surely contained something extraordinary. Defendant's expectation of privacy of his suitcase was foreclosed, and the constitutional prohibition against *unreasonable* searches and seizures was not violated.

In *People v. Hamilton* (1979), 74 Ill. 2d 457, 469, 386 N.E.2d 53, 58, the Illinois Supreme Court presaged both the result and the reasoning of the Supreme Court's decision in *Arkansas v. Sanders*. And in *Hamilton* the court noted that an exception could be recognized by the presence of exigent circumstances:

> "Considering the validity of the alleged inventory of the defendant's briefcase, we note, as did the court of appeals in *Chadwick*, that we intimate no judgment as to the propriety of inventorying personal luggage *given sufficient reasons*, such as suspicion that there might be explosives inside." (Emphasis added.)

I would affirm the decision of the trial court.