Irma **CARRASCO,** Appellant,

v.

The **STATE of Texas,** Appellee.

No. 892–83.

Court of Criminal Appeals of Texas, En Banc.

April 30, 1986.

Michael A. Lamson, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Eleanor Montague and Robert Loper, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, First Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was charged with felony possession of a controlled substance, to wit, cocaine. After a pretrial motion to suppress the search was denied, appellant plead nolo contendere and stipulated to the evidence in such a manner as to preserve error. The trial court found appellant guilty and assessed her punishment at three years probated and a five hundred dollar fine.

The Fourteenth Court of Appeals reversed the trial court and remanded for a new trial. See *Carrasco v. State*, No. B14–82–861–CR (Tex.App.—Houston [14th] decided May 28, 1983). We granted the State's Petition for Discretionary Review to determine the correctness of the Court of Appeals' holding that the search of appellant's receptacle was not a valid search incident to arrest. We reverse the Court of Appeals and affirm the trial court.

The evidence reflects that in the early morning hours of March 18, 1982 the appellant was involved in a one car accident on the North Loop West freeway in Houston. When officers arrived at the scene they found appellant standing next to her Porsche. Appellant and the arresting officer differ in their rendition of the facts. According to appellant, she was sober. She claimed that a vehicle cut her off and to avoid a collision, she ran off the road and into a guardrail. According to appellant she gathered her belongings and deposited them in a shoulder bag. Testimony established that the appellant carried this shoulder bag [1] with her at all times. Appellant then exited her vehicle and when police arrived, the bag in question was sitting on the ground next to the vehicle. She claimed she was conversing with one officer when she noticed Officer Boy "rummaging" through her bag which was located several feet from where appellant was standing. Appellant asked Officer Boy what he was looking for; he told her to be quiet and then placed her in the police vehicle to transport her to the police station. Appellant denied that Officer Boy ever arrested her for public intoxication; she further denied that the bag in question was physically on her body when Officer Boy initiated the search in question.

Officer Boy testified that upon arrival, he proceeded to investigate the scene of what to him appeared to be a one vehicle accident. Once he secured the scene he engaged the appellant in conversation. From speaking with appellant, he came to the conclusion that she was intoxicated. Officer Boy testified that appellant appeared glassy eyed, her speech was slurred, slow and deliberate, and she was slow moving; however he did not detect the odor of alcohol. Furthermore, Officer Boy found no evidence that appellant had sustained a head injury. Officer Boy testified that while he was speaking with appellant, she had the bag in question slung over her shoulder. He further testified that he placed appellant under arrest for public intoxication and he then attempted to take the bag from her in order to search for intoxicants and weapons. Appellant resisted the officer's efforts to retrieve the bag, making the officer suspicious. Officer Boy then forcibly seized the bag. Upon searching it he found three translucent vials containing a white powdery substance subsequently determined to be cocaine.

■ Appellant claims there was no probable cause to believe that she created a

1. The bag is larger than a normal-sized ladies purse but not large enough to constitute a suitcase; it can best be described as a "gym bag" or overnight bag. We believe under the facts of this case it makes no difference what moniker one pens on the receptacle in question.

danger to herself or others and therefore there was no valid arrest for public intoxication.[2] We disagree. Appellant had just been involved in a one car accident; she manifested symptoms of intoxication. The fact that appellant had already been involved in a car accident is sufficient probable cause to believe that she posed a danger to herself or others. *Davis v. State,* 576 S.W.2d 378 (Tex.Cr.App.1979). The officers had probable cause to arrest appellant for public intoxication.

■■■ The Court of Appeals found that the officer was merely looking for evidence of intoxication and not weapons and that since the officer had possession of the bag, there was no valid search incident to arrest. In so holding, we find that the Court of Appeals has perhaps misunderstood the United States Supreme Court's holding in *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). In *Robinson,* the Supreme Court made it clear that, once a police officer validly arrests a person, the officer may search the person and the area immediately associated with the person. See also *Pennsylvania v. Mims,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). If, in so searching, the officers find something of a suspicious nature, they may constitutionally further investigate. Thus the cigarette package in *Robinson* which contained a lump not common to the shape of a cigarette, was subject to a search for contraband.

Appellant argues that the officer did not have probable . cause to arrest her and therefore this search cannot be justified as a search incident to arrest. In *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) the Supreme Court delineated the exception to the search warrant requirement of a "search incident to arrest" and held that, pursuant to a valid arrest, an arresting officer may search the person of the arrestee and any area into which the arrestee might reach in order to obtain a weapon or destroy evidence.

Appellant also alleges that the search was invalid because she did not have immediate physical possession of the bag in question, nor was the bag within her reach. The foregoing is premised upon the belief that only appellant's testimony is to be believed. We note that the trial court heard the witnesses testify and was the exclusive trier of the facts. The trial court was free to believe or disbelieve any or all the testimony adduced, and obviously he chose to disbelieve appellant's version of the facts. *Alexander v. State,* 630 S.W.2d 355 (Tex.Cr.App.1982); *Duff v. State,* 546 S.W.2d 283 (Tex.Cr.App.1977).

Appellant next contends that the search was invalid since Officer Boy had exclusive possession of the bag at the time the search occurred. Both appellant and the Court of Appeals relied heavily upon *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

The facts of the instant case are easily distinguishable from those in *Chadwick.* In *Chadwick* there was no search incident to an arrest; the search occurred over an hour after the arrest and after the defendant had already been placed in jail and the ·repository in question had been removed to another building. In *Chadwick* there was an attempt by federal officers to squeeze a warrantless search into some exception which wholly failed. The facts in *Chadwick* did not fit either the "search incident to arrest" or the "automobile" exception to the warrant requirement. This is consistent with the holding in *Chimel,* which teaches us that a search proximate in time and place to the arrest, that is limited to the person of the arrestee and the area within his reach is a permissible search incident to arrest.

Perforce there are two factors that take the search in *Chadwick* out of the "search incident to arrest" exception. One, the officers had reduced the property in question to their exclusive control by removing the

2. V.T.C.A. Sec. 42.08, Penal Code, reads in part: "(a) An individual commits an offense if he appears in a public place under the influence

of alcohol or any other substance, to the degree that he may endanger himself or another."

property from the site of the arrest to a federal building and by placing the arrestee at another location, namely in a jail cell. The second factor, that there be no danger that the defendant be able to gain access to the property, was met in that the defendant was not even in the same building as the property and was in fact securely in jail.

 Neither of these factors are present in the case sub judice. Appellant was within a few feet of the bag when it was searched and clearly could have obtained access to it. Had the bag contained a weapon, the risk of appellant gaining access to it was no less dangerous once in the hands of the officer standing immediately adjacent to appellant than while it was in the actual grasp of the appellant. The officer did not have exclusive control over the property, inasmuch as the search occurred at the scene of the arrest, in a public place, and within the appellant's reach. We do not find *Chadwick* to be dispositive of the instant case.

Neither do the precedents of this Court support the reasoning of the Court of Appeals. In *Holt v. State*, 538 S.W.2d 125 (Tex.Cr.App.1976) this Court found that the search of a purse and suitcase located within a few feet from where the defendant was arrested was a valid search incident to arrest. See also *Jones v. State*, 640 S.W.2d 918 (Tex.Cr.App.1982). In *Stewart v. State*, 611 S.W.2d 434 (Tex.Cr.App.1981) a panel of this Court approved the search of the defendant's purse as a valid search incident to arrest and reiterated that a search incident to arrest extends to the person of the arrestee and objects immediately associated with the person of the arrestee or objects in an area within the control of the arrestee. The object need not be physically attached to the arrestee.

In *Chadwick*, supra the Supreme Court, inter alia, favored us with some troublesome language:

"Once law enforcement officers have reduced luggage or other personal property <u>not immediately associated with the person of the arrestee</u> to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." (emphasis added.) Id., 433 U.S. at 16, 97 S.Ct. at 2485.

It is the underscored portion of the above quote that has caused a great deal of consternation among the bench and bar.

To interpret "immediately associated with the person" to require actual bodily attachment would have the effect of vitiating "the search incident to arrest" exception to the warrant requirement. Perforce, to interpret *Chadwick* as limiting a police officer to the search of a defendant's repository, incident to arrest, only in the event that a defendant is contemporaneously and physically grasping the repository would be absurd. Indeed the Supreme Court recognized this dilemma in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and noted:

"It seems to have been the theory of the Court of Appeals that the search and seizure in the present case could not have been incident to the respondent's arrest, because Trooper Nicot, by the very act of searching the respondent's jacket and seizing the contents of its pocket, had gained 'exclusive control' of them. [citation omitted] But under this fallacious theory no search or seizure incident to a lawful custodial arrest would ever be valid; by seizing an article even on the arrestee's person, an officer may be said to have reduced that article to his 'exclusive control.'" Id. 453 U.S. at 461, 101 S.Ct. at 2865, 69 L.Ed.2d at 776.

 We therefore decline to adopt a talismanic interpretation of the term "exclusive control" as used in *Chadwick*, so as to hamstring police officers who are conducting searches incident to lawful arrests. Whether or not an officer has "reduced luggage or other personal property not immediately associated with the person of the arrestee" to his "exclusive control" will depend upon the totality and the exigencies of the circumstances in each case, and we so hold.

The judgment of the Court of Appeals is reversed and the judgment of the trial court is affirmed.

CLINTON, Judge, dissenting.

Reading the majority opinion in this cause may well lead one to wonder whose petition for discretionary review this is anyway, for it is appellant's *responses* to the State's grounds for review that are one by one set up and knocked down by the majority.

We granted review to examine the following holding of the Houston (14th) Court of Appeals:

"It is clear from the testimony of the arresting officer that the search was made for the sole purpose of determining what had caused Appellant's intoxication and not to protect evidence from being destroyed or a weapon from being seized. In fact, the officer admitted that Appellant could not seize a weapon from the luggage because the officer already had the luggage in his possession. The search of the luggage was, therefore, not incident to the arrest of Appellant and was without probable cause. Because no exigency existed, the search was unlawful."

The thrust of our determination to grant review was to decide whether this holding is consistent with *Stewart v. State*, 611 S.W. 2d 434 (Tex.Cr.App.1981) and its progeny, including *Jones v. State*, 640 S.W.2d 918 (Tex.Cr.App.1982); *Snyder v. State*, 629 S.W.2d 930 (Tex.Cr.App.1982) and *Farb v. State*, 634 S.W.2d 14 (Tex.App.—Beaumont 1982) no review history. More precisely the issue is first, the meaning and then, the applicability in the case at bar of a statement made in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), *viz*:

"Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." [1]

*Id.*, at 16, 97 S.Ct. at 2485, 53 L.Ed.2d at 551.

It is that underscored phrase which must be interpreted. The Supreme Court has not elucidated it.[2] Yet, *Stewart v. State*, supra, at 437, and its followings have taken the statement as some kind of search incident to arrest rule in the law of search and seizure. Applying it, the *Stewart* Court looked to Federal cases and sorted them out categorically, much as the courts themselves had been doing, and then decided that a purse was more like a wallet than like luggage. *Stewart*, supra, at 437–438. *Snyder v. State*, supra, seems to have upheld search of a wallet incident to arrest largely because other decisions noted in *Stewart* had done so—again, a determination by classification. On the other hand, *Jones v. State*, supra, did not undertake to put the briefcase there seized and searched in the same category other courts had in decisions discussed in *Stewart*, for they excluded a briefcase and attache case from the *Chadwick* dictum by likening such cases to luggage that is "not immediately associated with the person of the arrestee." See *Stewart*, supra, 437–438. In sum, if the *Chadwick* statement is now truly a rule of the law of search and seizure in this jurisdiction, its meaning remains less than lucid and its application has not been all that consistent.

A proper understanding of the *Chadwick* statement requires reading and harmoniz-

---

1. All emphasis is added by the writer of this opinion unless otherwise indicated.

2. *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) extended *Chadwick*, and made it clear that the Fourth Amendment applies to "personal luggage" wherever its loca-

tion, *id.*, at 766, 99 S.Ct. at 2594, but did not consider "the constitutionality of searches of luggage incident to the arrest of its possessor. See, e.g., *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)." *Id.*, 442 U.S. at 764, 99 S.Ct. at 2593.

ing it with *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and its progeny. In *Chimel* it was stated:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less."

395 U.S. at 762–763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. Citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), then only recently decided, the Court emphasized that the scope of a search incident to arrest must be strictly circumscribed in accordance with the events giving rise to the exigency, whether that be the need to seize a weapon or secure evidence.

In *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) the Court held, however, that search of the *person* of an arrestee is justified by events giving rise to probable cause to arrest in the first place. Case by case determination that a weapon or destructible evidence was likely to be present on the arrestee's person when the search was conducted is unnecessary. Thus, the requirement that the scope of a search be limited by circumstances surrounding arrest was found not to apply to search of the person or, apparently, objects immediately associated with the person of the arrestee.

But, as observed in *Chadwick*, 433 U.S. at 16, n. 10, 97 S.Ct. at 2486, n. 10, 53 L.Ed.2d at 551, n. 10, "[u]nlike searches of the person [citations omitted], searches of possessions within an arrestee's immediate control cannot be justified by any reduced expectation of privacy caused by the arrest." And though this observation seems to have been tempered under the limited circumstances presented in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Court noted there that its holding "in no way alters the fundamental principles established in the Chimel case regarding the basic scope of searches incident to lawful custodial arrests." 453 U.S. at 460, n. 3, 101 S.Ct. at 2864, n. 3, 69 L.Ed.2d at 775, n. 3.

Thus we are confronted with two types of search incident to arrest: those of the person and property "immediately associated" therewith, which require no justification beyond a lawful arrest; and those of the *area* around the arrestee, including any personal receptacles to which a legitimate expectation of privacy would ordinarily inhere, "that the arrestee might gain access to ... to seize a weapon or destroy evidence." In the instant case the court of appeals obviously felt that the search of appellant's "luggage" fell into the latter category, and that furthermore, appellant had been effectively denied access to it by the time the search was conducted. The State now contends that appellant's bag "is more like a purse" than "luggage," that it was therefore "immediately associated with the person" of appellant and could for

that reason be searched by virtue of the arrest alone, regardless of whether appellant might gain access to it after her arrest.

Because the court below called the repository belonging to appellant "luggage" and the parties as well as the arresting officer characterized it variously as "luggage bag," "baggage," "bag," "shoulder bag" and "suitcase," we ordered it up for our own inspection pursuant to Article 40.09, § 12, V.A.C.C.P. It is fairly rectangular in shape, its bottom measures eighteen by nine inches and it is eleven inches deep; there are zippered pockets at each end, two on one side and a single on the other; the main interior section is lined on all but one side and closes at the top by twin zippers; there are two "loop handles" midway and rings at each end for attaching a "shoulder strap." It is undisputed that appellant regularly used the container as a repository for her "paper work" as manager of two clubs, and on the occasion in question she testified that, knowing her wrecked automobile would be towed, she "took out all the stuff from the car" and put it in the container along with the "paper work," before the officers appeared on the scene.

Whatever it be called, "a repository for personal items when one wishes to transport them," *Arkansas v. Sanders,* supra, 442 U.S. at 764, 99 S.Ct. at 2593; *Stewart,* supra, at 438, does not become "immediately associated with the person" through the fortuitous circumstance that at time of arrest one is carrying that repository in hand, on one's shoulder, across one's back or by whatever other means and manner is necessary or convenient. So long as there is a legitimate expectation of privacy in its contents, "the owner has the right to expect that the contents ... will not, without his consent, be exposed on demand of the police," *Arkansas v. Sanders,* supra, at 767–

768, 99 S.Ct. at 2594–2595 (Chief Justice Burger concurring in the judgment).

Thus I would reject the State's contention that appellant's bag was "immediately associated with [her] person" and therefore subject to search by simple virtue of the fact of her valid arrest.

In its own confused analysis the majority never squarely addresses the State's contention.[3] Instead it concludes that the search was valid in any event because the arresting officer never reduced appellant's bag to his "exclusive control"—an absurd conclusion, at odds with any version of the facts, and impertinent to the question upon which we granted review.[4]

I would affirm the judgment of the court of appeals and save interpretation of "exclusive control" for another day. Because the majority declines to do so, I respectfully dissent.

MILLER, J., joins.

TEAGUE, Judge, dissenting.

We granted the State's petition for discretionary review, see *Todd v. State,* 661 S.W.2d 116 (Tex.Cr.App.1983), in order to make the determination whether the Houston Fourteenth Court of Appeals, in a unanimous opinion by Justice Sears, correctly held that the warrantless search by the police of appellant's closed overnight bag, which has dimensions of approximately 18 inches in length and 12 inches in width, which search occurred outside of appellant's automobile, was unlawful. See *Carrasco v. State,* (Tex.App.—Houston [14th] 1983). I find the court of appeals correctly held that the search of appellant's overnight bag was unlawful and would affirm its judgment.

The evidence reflects that after appellant's automobile collided with a stationary object on a Houston freeway, appellant was arrested by the police for public intoxi-

3. Along the way the majority *does* disapprove of the notion that for an item to be "immediately associated with the person" there must be "actual bodily attachment."

4. Thus, in ostensibly eschewing a talisman, in reality the majority creates one. After today no officer ever will have reduced an arrestee's property to his exclusive control until the arrestee is securely locked away.

cation. Prior thereto, she had removed herself and the overnight bag from the vehicle and was waiting for someone to come and pick her up when the police arrived to investigate the accident. A police officer testified that except for the lack of an alcoholic odor an intoxicated person usually has, appellant presented all the characteristics of a person intoxicated by the ingestion of alcohol. However, because he did not detect an odor of alcohol about appellant's person, he seized and searched appellant's overnight bag, in which he found, inter alia, three vials and a folded paper which were shown to contain cocaine, for which appellant was prosecuted for possessing. The court of appeals held that the warrantless search of the bag was neither a search incident to appellant's lawful arrest for public intoxication nor was probable cause established that the bag contained any unlawful contraband. I agree with the decision by the court of appeals that the search of the bag was unlawful, but do so for different reasons.

In its efforts to have the search of the bag sustained, the State makes the following argument in its petition for discretionary review: "The search of the appellant's shoulder bag was a search of an item immediately associated with the appellant's person and the Court of Appeals mistakenly held that the search was illegal and not incident to the arrest." The State also argues that the search was valid because inevitably the bag would have been subjected to a "routine property inventory preceding confinement" search at the stationhouse. It also argues that "public policy" justified the search of the bag. It asserts that the officer had the right "to determine if a medical emergency was at hand that would require immediate attention." For reasons I will state, I am unable to agree with any of the arguments the State makes and would overrule all of them.

I summarily reject the State's "public policy" argument because there is absolutely no evidence in the record that would support same. The record conclusively shows that the arresting officer searched the bag for evidence of intoxication. However, he also testified to conclusory statements that he also searched the bag "for possible weapons" and "for nitroglycerin." In light of the facts that were presented in the trial court, I totally reject his conclusory statements.

I pause to emphasize that at the time the officer searched the bag, the bag was in his exclusive possession or under his exclusive control. At that moment in time, appellant either had been dispossessed of the bag or the police had disassociated her from the bag. In sum, she had been disseized of her bag, although such had occurred lawfully.

As to the officer's search of the bag for evidence that might relate to appellant's need for medical services, the officer unequivocally testified that appellant never requested any medical attention: "No, sir, if she had I would have had an ambulance [sic] look at her." Also, other than his curiosity, there was no evidence adduced that the officer had a reasonable belief that inside of the bag might be evidence relating to appellant's state of intoxication.

I also reject the State's argument that the search of the bag was made pursuant to a routine inventory of the contents of the bag in preparation of appellant being "booked" and incarcerated. The facts of the case do not support such argument. Furthermore, there is no evidence that the search of the bag occurred as part of the process of appellant being taken to the station house to be booked and incarcerated. Cf. *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); *Stewart v. State*, 611 S.W.2d 434 (Tex.Cr.App. 1981); *Synder v. State*, 629 S.W.2d 930 (Tex.Cr.App.1982); *Murray v. State*, 615 S.W.2d 721 (Tex.Cr.App.1981). The search of the bag occurred near where appellant was originally arrested outside of her vehicle for public intoxication, and not at the station house.

Was the search of the bag permissible as an incident to a lawful arrest? I answer the question in the negative.

There is no question but that appellant was initially lawfully arrested for public

intoxication. Thus, under *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the arresting officer was authorized to search appellant's person and the area within her immediate control for weapons or destructible evidence.

However, under the facts and circumstances of this case, this right did not carry over to him making a warrantless search of appellant's overnight bag.

In *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the Supreme Court made the following holding:

Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

It is obvious to me that when the Supreme Court made this statement, it intended for the police to have the lawful right to search the arrestee's luggage or personal property that was immediately associated with the person of the arrestee, as an incident to a lawful arrest. However, once the police had disassociated the luggage or personal property from the person of the arrestee, and there was no longer a danger that the arrestee might or could gain access to the property to seize a weapon or destroy evidence, the Supreme Court did not intend, for Fourth Amendment purposes, that the police had the right to search luggage or personal property of the arrestee without a warrant as an incident to a lawful arrest.

In this instance, the evidence clearly reflects that when the warrantless search of appellant's luggage took place, the luggage had been reduced to the exclusive possession or was under the exclusive control of the arresting officer. There is no evidence that at that time there was any danger that appellant could have gained access to the bag to seize a weapon from inside of the

bag or could have destroyed evidence that might have been in the bag. Nor is there any evidence that had appellant been arrested solely for public intoxication, both appellant and the bag would have been taken to the station house. Nor is there any evidence that had this occurred appellant would have been booked and incarcerated in jail, and the bag thereafter inventoried by the police. The record is blank as to just what happens to a person arrested in Houston for public intoxication. Cf. Art. 14.06, V.A.C.C.P., and Art. 15.17, V.A.C.C.P.

It is now axiomatic that a person possesses a privacy interest in the contents of his personal luggage. Such interest is protected by both the federal and Texas Constitutions. Both the Fourth Amendment and Art. 1, Section 9, of the Texas Constitution "protect two different interests of the citizen-the interest in retaining possession of property and the interest in maintaining personal privacy." *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (Stevens, J., Opinion concurring in the judgment.)

The basic rationale for restricting a search incident to a lawful arrest is that the arrestee has a reasonable expectation of privacy which inheres to luggage "as a repository of personal effects." *United States v. Chadwick*, 433 U.S. at 13, 97 S.Ct. at 2484. I would hold that appellant had a reasonable expectation of privacy in the contents of her overnight bag.

Recently, the Supreme Court of the United States in *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the "dog sniffing case," held that the Fourth Amendment did not prohibit law enforcement authorities from temporarily detaining personal luggage for exposure to a trained narcotics detection dog on the basis of reasonable suspicion that the luggage contained narcotics. But the Court also held that the prolonged seizure that occurred in that cause was unreasonable since the police conduct exceeded the bounds of permissible investigative detention.

I find that the opinion implicitly reaffirmed the above principles of law governing the right of privacy in the contents of luggage when it stated the following: "In the ordinary case, the Court has viewed a seizure of personal property as per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." 103 S.Ct. 2641. Of course, under such circumstances, a warrantless search would also be unreasonable. However, see *U.S. v. Mazzone*, 782 F.2d 757 (7th Cir.1986), 38 Cr. L.Rep 2369.

I pause to point out that we are not dealing with an unopened or closed piece of luggage that had been seized from inside of an automobile and then searched at the scene, see, however, *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), and *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), but we are, instead, dealing with unopened luggage that at the time of the search had been disassociated from appellant and was then in the exclusive possession or control of the police. Also see *Michigan v. Miller*, 459 U.S. 1167, 103 S.Ct. 809, 74 L.Ed.2d 1010 (1983). Nor are we dealing with a search of luggage that was made at the station house preparatory to appellant being both booked and incarcerated. Nor are we dealing with a situation where the arresting officer had reason to believe that the luggage contained explosives or some other dangerous instrumentality. See, however, *United States v. Chadwick*, 433 U.S. at 15 n. 9, 97 S.Ct. at 2485 n. 9, in which the Supreme Court alluded to this exception.

In this instance, at the time the arresting officer seized appellant's bag, the bag had been disassociated from appellant's person. The officer did not then have even reasonable suspicion that the bag might contain contraband or explosives or some dangerous instrumentality. He searched the bag solely out of curiosity, namely, to see if the bag might contain evidence that would establish what was causing appellant to have

the appearance of an intoxicated person when there was no plain view evidence to support his conclusion that she was intoxicated because of the ingestion of alcoholic beverages.

I agree with what Justice Hill of the Fifth Circuit recently stated in the concurring opinion he filed in *United States v. Johnson* 588 F.2d 147 (5th Cir.1979):

When exigencies can be eliminated by the exercise of the authority to immobilize luggage through a warrantless seizure, the warrantless activity must end there, and a warrant is required to search the contents of the luggage, absent some other warrant excusing exigency. Here, the warrantless activity did not cease with the seizure. Therefore, the subsequent warrantless search was invalid.

Under the facts and circumstances of this case, I would hold that before a lawful search of appellant's luggage was permissible, it was imperative that the police first obtain a search warrant. They did not do so; thus, the warrantless search of appellant's luggage was unlawful and the trial court erred in not suppressing the evidence seized therefrom. Also see *United States v. Chadwick*, supra, (closed footlocker); *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) (suitcase); *United States v. Bella*, 605 F.2d 160 (5th Cir.1979) (guitar case); *United States v. Vickers*, 599 F.2d 132 (6th Cir.1979) (two locked footlockers); *United States v. Mackay*, 606 F.2d 264 (9th Cir.1979) (suitcase); *United States v. Meier*, 602 F.2d 253 (10th Cir.1979) (backpack); *Metcalfe v. State*, 593 P.2d 638 (Alaska Sup.Ct.1979) (sealed box); *Liles v. State*, 375 So.2d 1094 (Fla.App.1979) (satchel); *Haugland v. State*, 374 So.2d 1026 (Fla.App.1979) (luggage); *Buday v. State*, 150 Ga.App. 686, 258 S.E.2d 318 (1979) (luggage); *People v. Bayless*, 76 Ill.App.3d 843, 32 Ill.Dec. 433, 395 N.E.2d 663 (1979) (suitcase); *Pirner v. State*, 45 Md.App. 50, 411 A.2d 135 (1980) (duffle bag); *State v. Gauldin*, 44 N.C. App. 19, 259 S.E.2d 779 (1979) (suitcase);

*State v. Downes,* 285 Or. 369, 591 P.2d 1352 (1979) (trunk); *State v. Groda,* 285 Or. 321, 591 P.2d 1354 (1979) (closed brief-case). Cf., however, *United States v. Ross,* supra.

The State urges that several decisions from this Court support its argument that the search was permissible as an incident to a lawful arrest, and asserts that the decision of the court of appeals conflicts with those holdings. I find that it does not.

*Holt v. State,* 538 S.W.2d 125 (Tex.Cr. App.1976), is factually distinguishable from this cause because there "the search of the suitcases was to secure the officers' own safety and to prevent the destruction of evidence." The opinion reflects that at the time of the search, the defendant was neither disassociated from nor had he been dispossessed of the suitcases by the police when the search occurred, i.e., the suitcases had not been reduced to the exclusive possession or control of the police when the search took place.

*Stewart v. State,* 611 S.W.2d 434 (Tex. Cr.App.1981), is a little more troublesome in distinguishing it from what the court of appeals held. However, after carefully reading the facts as stated in the opinion, and comparing those facts with *Illinois v. Lafayette,* supra, which had not yet been decided by the Supreme Court when this Court decided *Stewart v. State,* supra, it is obvious it is distinguishable. There, the seizure and subsequent search of the defendant's purse that occurred in that cause occurred during the station house "booking process," which, by the opinion, would have included incarceration of the defendant and a standard inventory of the contents of the purse for the protection of the police officers from an accusation of theft.

*Synder v. State,* 629 S.W.2d 930 (Tex.Cr. App.1982), is also slightly troublesome in distinguishing it from what the court of appeals held. However, I find it is also distinguishable. There, the search of the defendant's wallet occurred in the field. It is obvious, however, from what is stated in the opinion, that the field search was the commencement of the station house book-ing process, which would have included incarceration *and* an inventory of the wallet. Thus, *Stewart* is controlled by *Illinois v. Lafayette,* supra. Also see *Lalande v. State,* 676 S.W.2d 115 (Tex.Cr.App.1984), in which this Court held that "once it becomes unequivocally clear that the item is to accompany the detainee, the right of inspection accrues immediately, and is not limited to inspections carried out within the station [house] itself."

Judge Clinton expresses a desire in the dissenting opinion he has filed in this cause that this Court should interpret the meaning of the term "not immediately associated with the person of the arrestee," which is taken from *United States v. Chadwick,* 433 U.S. at 16, 97 S.Ct. at 2485. Because of the facts of this case, and the reasons I give for striking down the warrantless search of appellant's luggage, I find such is unnecessary in this instance. In this instance, we are not dealing with the situation where a search for items that are normally attached to an individual's person, such as a watch, has occurred, nor are we dealing with the situation which encompasses the search of items that are found on or on the inside of a person's clothing which normally accompany the person wherever he might go, such as a wallet or purse.

In this instance, the State did not establish that had appellant been arrested by the police solely for committing the offense of public intoxication, her overnight bag would either have accompanied her to the station house or that she would have been not only booked but also incarcerated. By a "property slip" that I have found inside of the overnight bag, which was not introduced into evidence, cf., however, *Chambers v. State,* 508 S.W.2d 348, 354 (Tex.Cr. App.1974), it reflects that even though it is undisputed that the bag contained a large amount of appellant's paper work for the two night clubs she managed, there is no mention on the property slip of these contents. The only thing stated on the property slip that relates to appellant's overnight

bag is that the police obtained possession of a "large leather bag."

For the above and foregoing reasons, I would hold that appellant's luggage, in the form of an overnight bag, was not immediately associated with her person at the time the bag was searched. I find that the court of appeals correctly held that the trial court committed reversible error by denying appellant's motion to suppress. Its judgment should be affirmed and not reversed.

I dissent to the majority opinion reversing its judgment.