[No. 4177-8-III.   Division Three.   April 8, 1982.]

THE STATE OF WASHINGTON, *Respondent*, v. JIMMY LEE COLE, *Appellant*.

*Michael J. Platts* and *Platts, Zimmerman & Estes,* for appellant.

502

*E. R. Whitmore, Jr., Prosecuting Attorney,* and *James E. Freeley, Deputy,* for respondent.

McINTURFF, C.J.—Jimmy Lee Cole appeals his conviction of possession of a controlled substance. We are again asked to decide the boundaries of the Fourth Amendment protection within an automobile after a valid arrest of the driver who consented to a search of his vehicle, but disclaimed ownership of the closed luggage contained in the hatchback area of the automobile.

On May 18, 1979, an American Automobile Association (AAA) employee contacted the Wenatchee police department concerning the activities of Mr. Cole who wished to purchase $5,000 in traveler's checks and fly to San Diego. Detective Crist contacted the local Secret Service and FBI agents informing them Mr. Cole might be attempting to launder money from a recent bank robbery. The address given to the AAA employee by Mr. Cole was occupied by a man from southern California, Danny Lessard, who had been convicted 9 months earlier on drug related charges. Detective Crist and other officers placed Mr. Cole under surveillance. During the surveillance, the AAA employee notified the police department of Mr. Cole's inquiry about sending $50,000 to an undisclosed location.

When it became obvious Mr. Cole was driving out of town, Detective Crist requested a uniformed police officer in a marked vehicle stop him. During his conversation with the uniformed officer, Mr. Cole gave 880 Wilson Street as his address for the previous evening. There is no 880 Wilson Street in Wenatchee; however, Mr. Lessard's previous address had been 440 Wilson Street. The police officer radioed this information to Detective Crist and also reported Mr. Cole had a sawed–off baseball bat behind his seat.

Thereafter, Detective Crist approached Mr. Cole and asked if he would mind entering the back seat of Detective Crist's unmarked vehicle to answer some questions. Mr. Cole complied. Mr. Cole cooperatively stated he was in

Wenatchee on business and again repeated a nonexistent Wilson Street address. Because of this incorrect answer and Mr. Cole's prior activities, Detective Crist gave him *Miranda* warnings and then informed Mr. Cole he believed he was dealing in drugs. Upon denial of drug involvement, Detective Crist asked for permission to search Mr. Cole's hatchback automobile, explaining he had a constitutional right to refuse, but they could acquire a search warrant. Mr. Cole consented to the search but told Detective Crist the two suitcases in the rear of the car were not his.

The search revealed a handgun which, upon checking, was discovered to be stolen. Detective Crist then placed Mr. Cole under arrest, continued the search, opened the suitcases and discovered eight bags of amphetamine tablets.

At the suppression hearing, the court ruled the police had sufficient articulable suspicion to stop Mr. Cole and ruled the consent to search the car encompassed the suitcases.

Initially, Mr. Cole claims the court erred in finding he was under arrest and seized for Fourth Amendment purposes during his initial questioning.

█ The Fourth Amendment applies to all seizures of the person, including seizures involving a brief detention short of traditional arrest. *Davis v. Mississippi,* 394 U.S. 721, 22 L. Ed. 2d 676, 89 S. Ct. 1394 (1969); *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Under *Terry* an officer may make a brief investigatory detention if the officer has within his knowledge reliable, articulable facts and circumstances sufficient to warrant a prudent person in believing that criminal activity is afoot and a suspect may be involved in it. Review of an issue relating to the "stop" in question is based upon the totality of facts and circumstances within the officer's knowledge at the time of the officer's stop. *State v. Fricks,* 91 Wn.2d 391, 398, 588 P.2d 1328 (1979); *see also State v. Sykes,* 27 Wn. App. 111, 114, 615 P.2d 1345 (1980). Thus, where an officer entertains a well founded suspicion not amounting to probable cause, the officer may stop and briefly detain the person for

investigative purposes. *State v. Wakeley,* 29 Wn. App. 238, 240, 628 P.2d 835 (1981); *see also State v. Gluck,* 83 Wn.2d 424, 426, 518 P.2d 703 (1974).

Here, the police could focus on a number of factors: Mr. Cole was from out of town; he was carrying large amounts of cash; he had given the address of a known drug offender; he inquired about traveling to San Diego (which the officers knew to be an area from which Northwest drugs originate); he may have been using traveler's checks to launder money; and he inquired about wiring $50,000 cash to an undisclosed location. There are sufficient objective facts to base a well founded suspicion of actual or potential criminal activity.

Mr. Cole next maintains his consent was coerced by custodial questioning and the subsequent search of his vehicle was unreasonable.

■ Whether consent was freely given is to be determined by the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973). Custody alone does not invalidate consent; the court must look for subtle coercion or acts or threats of violence. *United States v. Watson,* 423 U.S. 411, 46 L. Ed. 2d 598, 96 S. Ct. 820 (1976). Absent a warrant, the burden is on the State to prove by clear and convincing evidence consent was truly voluntary and fully informed. *State v. Garske,* 74 Wn.2d 901, 447 P.2d 167 (1968); *State v. Shoemaker,* 85 Wn.2d 207, 533 P.2d 123 (1975). Here, consent was clearly given to search the rental vehicle. He was also informed of his right to refuse consent which would force the officers to obtain a search warrant. It is undisputed Mr. Cole remained cooperative. His subsequent statement read:

> My name is Jim Cole. [I] [a]m staying at 1200 Grand Ave San Diego, CA 92077. Police officers asked me if they could search my car and I said yes and now I am in there [*sic*] custody. They said I didn't have to give them permission but I don't have anything to lose so I let them search the car. I was advised of my rights before they searched my car.

■ However, our courts have repeatedly held that a search may go no further than the limits for which the consent was given.[1] *State v. Johnson*, 71 Wn.2d 239, 243–47, 427 P.2d 705 (1967); *McNear v. Rhay*, 65 Wn.2d 530, 538–40, 398 P.2d 732 (1965); *State v. Cuzick*, 21 Wn. App. 501, 505, 585 P.2d 485 (1978). Although Mr. Cole's statement indicates he gave consent to search the vehicle, nothing in the record indicates he extended that consent to permit officers to sort through personal belongings in a closed suitcase. Detective Crist testified:

Q. And you never specifically asked Mr. Cole if you could search the suitcase, is that right?
A. We asked him if we could search the vehicle.
Q. But you never specifically asked him if you could search the suitcases, is that right?
A. Never specifically asked him in regard to the suitcases, no.

The United States Supreme Court in *Arkansas v. Sanders*, 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979), considered the constitutionality of a warrantless search of

---

[1]The Fourth Amendment has generally been taken to require that, to be reasonable, a search must be authorized by a warrant. 2 W. LaFave, *Search and Seizure* § 4.1 (1978). Exceptions to this rule are allowed. In addition to consent, certain exigent circumstances permit a warrantless search; *see, e.g., Chimel v. California*, 395 U.S. 752, 762–63, 23 L. Ed. 2d 685, 693, 89 S. Ct. 2034 (1969) (in search incident to arrest, police may search only the area within the arrestee's zone of control); *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642 (1967) (police may search without warrant when in pursuit of fleeing criminal); *Carroll v. United States*, 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925) (police may search an automobile on probable cause). Justification for the automobile exception was based on the vehicle's mobility. Warrantless searches were allowed when police had probable cause to believe a search would reveal the law had been broken. *See Carroll v. United States, supra*, 267 U.S. at 153–55. Subsequent cases expanded the exceptions to uphold searches when mobility of the vehicle was not a factor. *See Chambers v. Maroney*, 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970) (search at police station after arrest). However, even though the court has noted "less rigorous warrant requirements govern [automobiles] because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office", *South Dakota v. Opperman*, 428 U.S. 364, 367, 49 L. Ed. 2d 1000, 1004, 96 S. Ct. 3092 (1976), the court has also determined luggage found within an automobile is not thereby subject to a lower degree of constitutional protection. *Arkansas v. Sanders*, 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979).

luggage taken from a lawfully stopped automobile. The court held:

> [T]he warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree it applies to such luggage in other locations. Thus, insofar as the police are entitled to search such luggage without a warrant, their actions must be justified under some exception to the warrant requirement other than that applicable to automobiles stopped on the highway.

*Arkansas v. Sanders, supra,* 442 U.S. at 766, 61 L. Ed. 2d at 246. The court explained its rationale in 442 U.S. at 761–64, 61 L. Ed. 2d at 243–45:

> There are essentially two reasons for the distinction between automobiles and other private property. First, . . . the inherent mobility of automobiles often makes it impracticable to obtain a warrant. . . . In addition, the configuration, use and regulation of automobiles often may dilute the reasonable expectation of privacy that exists with respect to differently situated property.
>
> . . .
>
> . . . One is not less inclined to place private, personal possessions in a suitcase merely because the suitcase is to be carried in an automobile rather than transported by other means or temporarily checked or stored. Indeed, the very purpose of a suitcase is to serve as a repository for personal items when one wishes to transport them.

(Citations omitted.) In a footnote the court additionally explained: "Our decision in this case means only that a warrant generally is required before personal luggage can be searched . . ." *Id.* at 764 n.13. Although other containers, depending upon their nature and condition, may not manifest an expectation that the contents would remain free from public examination, courts have held, absent a valid exception to a search warrant, that luggage and containers exhibiting a reasonable expectation of privacy are deserving of the full protection of the Fourth Amendment.[2]

---

[2]*See United States v. Bella,* 605 F.2d 160 (5th Cir. 1979) (a guitar case); *United States v. Gooch,* 603 F.2d 122 (10th Cir. 1979) (briefcase); *People v. Dalton,* 24 Cal. 3d 850, 598 P.2d 467, 157 Cal. Rptr. 497 (1979) (leather box, small

*See State v. Marcum,* 24 Wn. App. 441, 450–51, 601 P.2d 975 (1979) (an athletic bag). Since Mr. Cole did not consent to a search of the luggage contained in the luggage compartment of his hatchback vehicle, the warrantless search was improper and its fruits should have been suppressed.[3] *See State v. Johnson,* 16 Wn. App. 899, 904, 559 P.2d 1380, *review denied,* 89 Wn.2d 1002 (1977).

Our view is not changed after analyzing the recent United States Supreme Court decisions in *Robbins v. California,* 453 U.S. 420, 69 L. Ed. 2d 744, 101 S. Ct. 2841 (1981) (plurality opinion) and *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), *aff'd after remand, People v. Belton,* 55 N.Y.2d 49, 432 N.E.2d 745, 447 N.Y.S.2d 873 (1982). Although consent to search was not at issue, both cases provided guidelines for searches incident to arrest.

In *Robbins,* two highway patrol officers stopped the defendant for driving erratically. The smell of marijuana smoke and the sight of a "roach clip" in plain view inside the station wagon established probable cause for a search of the car. Robbins was arrested and handcuffed. While one officer questioned him, the other searched the passenger compartment. When the latter discovered a cookie tin which contained rolling papers and a small quantity of marijuana, Robbins stated, "'What you are looking for is in the back.'" *People v. Robbins,* 103 Cal. App. 3d 34, 38, 162 Cal. Rptr. 780 (1980). An officer went to the back of the station wagon and opened the recessed luggage compartment. Inside the compartment he found two packages

---

metal box and tool box); *Liles v. Florida,* 375 So. 2d 1094 (Fla. Dist. Ct. App. 1979) (satchel); *People v. Bayles,* 76 Ill. App. 3d 843, 395 N.E.2d 663 (1979) (a cloth whiskey bag); *Commonwealth v. Moon,* 8 Mass. App. 375, 394 N.E.2d 984 (1979) (wallet).

[3]We are aware of Mr. Cole's denial of ownership in the luggage; however, our state Supreme Court in a plurality opinion found our state constitution conferred a right to automatic standing under these circumstances. *State v. Simpson,* 95 Wn.2d 170, 180–81, 622 P.2d 1199 (1980); *State v. White,* 97 Wn.2d 92, 108–09, 640 P.2d 1061 (1982).

wrapped in opaque green plastic and sealed several times over with tape—a form of packaging that he believed was customarily used for drugs. He then unwrapped the packages and discovered that each contained 15 pounds of marijuana. The court determined the warrantless opening of these wrapped packages, found in a luggage compartment during the course of a lawful warrantless search, was violative of the Fourth Amendment. The court expressed the view that a closed, opaque container which does not clearly announce its contents, may not be opened without a warrant.

In *Belton,* the defendant was one of four men in a speeding automobile stopped by a lone patrolman. The officer smelled marijuana in the car and observed on the floorboard an envelope marked "super gold", a name he associated with a particular type of marijuana. He arrested the four men for possession of marijuana, segregated them around the outside of the car, and reached into the vehicle to get the "super gold" envelope. Finding that it in fact contained marijuana, he read to them their *Miranda* rights. After searching each one again, the patrolman proceeded to search the vehicle for further contraband. He found four jackets on the back seat. Patting down the leather jacket belonging to Belton, he found something inside one of the zippered pockets. He unzipped the pocket and found a small amount of cocaine. The court determined the warrantless search of the passenger compartment and personal effects therein was constitutionally valid as it was contemporaneous with the lawful custodial arrest of the occupant.

The Supreme Court decided the validity of the two searches on the same day, ruling in *Robbins* the warrantless search was not authorized by the automobile exception to the Fourth Amendment and in *Belton* the search was constitutionally permissible as a search incident to an arrest. The two cases produced eight separate opinions reflecting different approaches to the Fourth Amendment and the

exceptions to its warrant requirement.[4]

Justice Stewart, in his plurality opinion in *Robbins* and in his majority opinion in *Belton,* used a privacy approach. The approach is premised on the belief that a person has a different expectation of privacy when he is in his automobile than when he is placed under arrest. The automobile exception depends in part upon the theory that the expectation of privacy in an automobile is diminished but not eradicated entirely. *See South Dakota v. Opperman,* 428 U.S. 364, 367–68, 49 L. Ed. 2d 1000, 1004, 96 S. Ct. 3092 (1976). The automobile exception allows warrantless searches only of items that are in plain view in the automobile; the police may not search a closed container unless the container's shape or appearance clearly reveals its contents. *See Arkansas v. Sanders, supra.* However, in *Belton* the court concluded a search incident to an arrest eliminates any privacy interest the arrestee might have in the area immediately around him and allows the police to search any open or closed container within the "passenger compartment." Justice Stewart reasoned that an automobile interior "generally . . . [is] within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary item.'" *Belton,* 453 U.S. at 460, 101 S. Ct. at 2864, citing *Chimel v. California,* 395 U.S. 752, 763, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969). Subsequent to the *Robbins* and *Belton* decisions the District of Columbia Circuit Court of Appeals in *United States v. Russell,* 670 F.2d 323 (D.C. Cir. 1982) indicated that a hatchback area reachable without exiting the vehicle properly ranked as part of the passenger compartment. The court in *Russell* determined a paper bag easily penetrable by the occupants of the vehicle and carried in the hatchback area was not insulated from a

---

[4]Justice Powell, concurring in the *Robbins* judgment, stated: "[T]he law of search and seizure with respect to automobiles is intolerably confusing. The Court apparently cannot agree even on what it has held previously, let alone on how these cases should be decided." *Robbins,* 453 U.S. at 430, 101 S. Ct. at 2848.

warrantless search.[5]

■■■ In *Robbins* the plurality decided that the packages did not look enough like contraband to justify the officer's conclusion that they were indeed contraband and that he was entitled to search. Similarly, in *Belton* the court concluded as a fact that an arrestee's zone of control included the automobile he has recently occupied. However, we do not read *Belton* as having turned its back on the logic of the court's earlier decision in *Chimel v. California, supra,* which restricted police searches incident to arrest to the arrestee's immediate area of control. The closed luggage was placed in the hatchback portion of Mr. Cole's vehicle presumably outside his reach and at least briefly impenetrable. Moreover, the suitcases did not clearly announce their contents. *Robbins; Sanders.*

A redefinition of the zone of control has no principal stopping point and therefore presents the danger of even greater expansion and emasculation of the *Chimel* rule. Our analysis of these cases indicates the proper rule to apply to the instant facts is one that recognizes the overriding need to protect the arresting officer and the desire to prevent the destruction of evidence.[6] Mr. Cole gave permission to search the vehicle but not to sort through disclaimed luggage in the hatchback area. Consequently, there was no danger to the officers or probability evidence would be destroyed.

The ruling of the Superior Court is reversed; the case is remanded for trial in accordance with this opinion.[7]

MUNSON, J., concurs.

---

[5]The police officers in *Russell,* unlike the instant case, had probable cause to believe the vehicle contained contraband.

[6]To infer a contrary holding would force citizens to make an affirmative effort to seal their packages and secrete them in unobservable luggage compartments.

[7]The court may take an opportunity to clarify its holdings in *Robbins* and *Belton.* It has granted certiorari in *United States v. Ross,* 655 F.2d 1159 (D.C. Cir.), *cert. granted,* 454 U.S. 891, 70 L. Ed. 2d 205, 102 S. Ct. 386 (1981), a case

ROE, J. (concurring specially)—I concur, but believe any discussion of cases relating to search incident to arrest is irrelevant.

involving a warrantless search of a closed, but unsealed, paper bag found in an automobile trunk, with the request that the parties address the issue of reconsidering *Robbins.*