[No. 46448-5-I.   Division One.   September 17, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. JESSE JAMES HOLMES, *Appellant*.

---

[14] *Biggs*, 119 Wn.2d at 137.

512

*David B. Koch* (of *Nielsen, Broman & Associates, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Daniel J. Clark, Deputy*, for respondent.

ELLINGTON, J. — Police entered Jesse Holmes' residence on the strength of a consent to search given by Cynthia

Gilbert. But Gilbert had no actual authority to consent. The question is whether police reasonably relied upon Gilbert's apparent authority. We hold they did not, and therefore Holmes' subsequent consent was ineffective under *State v. Ferrier*.[1] The evidence seized should have been suppressed. We reverse.

## FACTS

Late on the night of September 28, 1999, a Seattle police officer stopped Cynthia Gilbert for speeding. A strong odor of alcohol emanated from her car, and the officer observed a snifter of alcohol next to a baggie containing what appeared to be crack cocaine. The officer arrested Gilbert, and in the search incident to arrest, found approximately 31 grams of cocaine bagged in small increments and $2,500 in small bills. Gilbert told the officer that in a few weeks, she was scheduled to begin a 10-year sentence for federal drug trafficking.

Gilbert wanted to work out a way to remain free until she reported to federal prison. She professed she was simply a delivery person, and offered to take the officer to the dealer, whom she identified as Jesse Holmes. She alleged Holmes possessed several ounces of cocaine, and that he shared her apartment in Lake City, where he could then be found. Gilbert's only evidence of her residence there was an old phone bill addressed to her at the Lake City address. Gilbert produced paperwork that verified her story about her pending federal incarceration; a computer check also verified that the Lake City address was one with which Gilbert had "some sort of history of contact or had used that address in the past."[2]

Gilbert signed a consent to search. At approximately 2:00 A.M., at least four officers accompanied Gilbert to the Lake City apartment. At the door, Gilbert revealed she did not

---

[1] 136 Wn.2d 103, 960 P.2d 927 (1998).

[2] Report of Proceedings (RP) (Mar. 1, 2000) at 13.

have a key. She "came up with an excuse why she didn't have keys to the apartment. . . . She said something about losing them or something."[3] Gilbert told police they should just knock, and Holmes would come to the door. Gilbert then knocked. The door was answered by a Ms. Foy. The arresting officer asked to speak with Holmes. Foy invited the police inside and indicated Holmes was in the back bedroom.[4]

Because Gilbert had told them Holmes had access to a weapon, two officers went to secure him. Holmes and a woman were in his bedroom. One of the officers escorted Holmes to the living room and informed him of his rights; the other observed a crack pipe and other drug paraphernalia in his room.

The arresting officer told Holmes that Gilbert said he was dealing drugs. Agitated, Holmes denied the allegations, saying he was an addict, not a dealer, and that any cocaine in the apartment was for personal use. The officer counseled Holmes to calm down, and told him "if that's true, then all we're looking at is just a possession case for you."[5] Because Holmes and Foy indicated Gilbert did not currently reside there, the officer obtained consent from Holmes and Foy. The officers searched the apartment and recovered two grams of cocaine, which Holmes admitted belonged to him.

After Holmes was transferred to the precinct, the officers escorted Gilbert to an address in Seattle for which she did have keys, mail, and belongings, and from which they recovered substantial quantities of cocaine and cash.

Holmes was charged with possession of cocaine. He moved to suppress the evidence against him on grounds the search of his apartment was unlawful because Gilbert lacked authority to consent. The court admitted the evi-

---

[3] RP (Mar. 1, 2000) at 21-22.

[4] Ms. Foy's status as either guest or coresident is not clear; no issue was raised as to her authority to invite the officers into the apartment.

[5] RP (Mar. 1, 2000) at 29-30.

dence, holding that the officers' belief in Gilbert's apparent authority to consent was reasonable and that no search occurred until after Holmes consented. Following a stipulated trial, Holmes was found guilty as charged.

## DISCUSSION

■ On appeal of a suppression ruling, we review a trial court's conclusions of law de novo, and apply the substantial evidence standard to findings of fact.[6] While Holmes assigns error to certain findings, he chiefly objects to the court's conclusions that the initial entry was valid under the apparent consent doctrine, and that his consent to search was effective under *State v. Ferrier*.[7] Our review is thus de novo.

### Holmes' Consent

■ Warrantless searches are generally condemned.[8] Exceptions to the requirement of a warrant are " 'jealously and carefully drawn . . . [to] provide for those cases where the societal costs of obtaining a warrant, such as danger to law officers of the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate.' "[9] The State has the burden of establishing that a warrantless search falls within one of the exceptions.[10] Consent to a search by one having the authority to give such consent constitutes one exception to the warrant requirement.[11]

---

[6] *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999).

[7] 136 Wn.2d 103, 960 P.2d 927 (1998).

[8] *Payton v. New York*, 445 U.S. 573, 590, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996) (under the Washington Constitution, warrantless searches are unreasonable per se).

[9] *Hendrickson*, 129 Wn.2d at 70 (quoting *Arkansas v. Sanders*, 442 U.S. 753, 759, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979)).

[10] *Hendrickson*, 129 Wn.2d at 70.

[11] *State v. Mathe*, 102 Wn.2d 537, 541, 688 P.2d 859 (1984).

██ The Washington Constitution grants great protection to its citizens' privacy, especially in their homes.[12] " '[T]he closer officers come to intrusion into a dwelling, the greater the [state] constitutional protection.' "[13] Washington courts have therefore particularly guarded against warrantless police intrusion into a residence. In *Ferrier*, the court held that when police seek permission to enter a residence (a procedure known in police lexicon as a "knock and talk") and their intent is to seek consent to search for contraband or evidence, the knock and talk procedure is inherently coercive.[14] Most home dwellers, confronted on their doorsteps or in their homes by police asking to search, are not knowledgeable or assertive enough to raise the question of a warrant.[15] Indeed, it has been said that "virtually everyone" accedes to the requested search.[16] To satisfy the state constitution, therefore, officers must mitigate the coercive effects of the knock and talk by warning home dwellers of their right to refuse consent:

> [W]hen police officers conduct a knock and talk for the purpose of obtaining consent to search a home, and thereby avoid the necessity of obtaining a warrant, they must, prior to entering the home, inform the person from whom consent is sought that he or she may lawfully refuse to consent to the search and that they can revoke, at any time, the consent that they give, and can limit the scope of the consent to certain areas of the home. *The failure to provide these warnings, prior to entering the home, vitiates any consent given thereafter.*[17]

---

[12] *State v. Johnson*, 104 Wn. App. 409, 415, 16 P.3d 680, *review denied*, 143 Wn.2d 1024 (2001).

[13] *State v. Young*, 123 Wn.2d 173, 185, 867 P.2d 593 (1994) (quoting *State v. Chrisman*, 100 Wn.2d 814, 820, 676 P.2d 419 (1984)).

[14] *Ferrier*, 136 Wn.2d at 115.

[15] *Ferrier*, 136 Wn.2d at 115.

[16] *Ferrier*, 136 Wn.2d at 116.

[17] *Ferrier*, 136 Wn.2d at 118-19 (emphasis added). *See also State v. Williams*, 142 Wn.2d 17, 28, 11 P.3d 714 (2000) (*Ferrier* rule applies where police seek to conduct a search for contraband without obtaining a search warrant). Where police officers are not conducting a knock and talk procedure to obtain consent to search, courts employ a totality of the circumstances test to determine whether

The *Ferrier* procedure was not followed here. Police came to Holmes' apartment without a warrant, intending to search for contraband, and entered without advising Holmes or Foy of the right to refuse consent. Both eventually consented to the search, but only after police rousted Holmes from his bedroom in the middle of the night and informed him he stood accused of dealing drugs. Upon Holmes' protests, the arresting officer told Holmes that he was "only looking at" a possession charge if he was telling the truth. Only then did Holmes consent. This is precisely the coercive situation the *Ferrier* court sought to prevent. Holmes' consent, standing alone, was inadequate under *Ferrier* to authorize the initial entry or the search.

But if Gilbert's consent was sufficient to authorize the initial intrusion, no violation of *Ferrier* occurred.

## Gilbert's Consent

A third party may consent to a search if he or she possesses "common authority over or other sufficient relationship to the premises or effects sought to be inspected."[18] Common authority exists where there is "mutual use of the property by persons generally having joint access or control for most purposes."[19]

It is undisputed that Gilbert did not actually have such authority. But the Fourth Amendment[20] is satisfied by

consent to enter is valid. *State v. Bustamante-Davila*, 138 Wn.2d 964, 981, 983 P.2d 590 (1999).

[18] *United States v. Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974); *Mathe*, 102 Wn.2d at 541.

[19] *Matlock*, 415 U.S. at 171 n.7.

[20] Holmes argues that the doctrine of apparent authority violates article I, section 7 of the state constitution. Ordinarily we would address the state constitutional issue first. *See Robinson v. City of Seattle*, 102 Wn. App. 795, 808, 10 P.3d 452 (2000) (noting courts should address state constitutional issues before federal constitutional issues). But given our holding that the doctrine was improperly invoked on these facts, we do not reach the constitutional question. *See City of Seattle v. Williams*, 128 Wn.2d 341, 347, 908 P.2d 359 (1995) (if it is not necessary to reach a constitutional question in order to resolve an issue before an appellate court, the court should decline to do so).

consent from someone who appears to have authority, so long as police have a reasonable belief in the authority of the person giving consent.[21] As with other factual determinations bearing upon search and seizure, whether officers reasonably believe in a third person's authority to consent is judged against an objective standard. The question is whether "the facts available to the officer at the moment [would] 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises."[22]

Under sound application of the apparent authority rule, police are required to make reasonable inquiries when they find themselves in ambiguous circumstances.[23] In *Illinois v. Rodriguez*, the Supreme Court cautioned that officers may not always take third-party consent at face value: "Even when the (consent) is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry."[24]

Circumstances here certainly suggested ample room for doubt. To begin with, the information indicating Gilbert lived at the Lake City apartment was limited to Gilbert's statement that she lived there with Homes, her possession of an envelope addressed to her there (the record does not reveal the postmark date), and a computer report that she had been associated with that address in the past. Other information indicated an urgent need for further inquiry.

---

[21] *Illinois v. Rodriguez*, 497 U.S. 177, 186, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990) (an officer's reasonable belief in the apparent authority of a third party to consent to a search validates an entry whether or not the authority in fact existed).

[22] *Rodriguez*, 497 U.S. 177, 189, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990) (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)); *State v. Ryland*, 120 Wn.2d 325, 840 P.2d 197 (1992) (remand required to determine whether police reasonably believed that house guest had authority to consent to officer's entry into house to effect warrantless arrest).

[23] WAYNE R. LAFAVE, SEARCH AND SEIZURE § 8.3(g), at 747 (3d ed. 1996).

[24] *Rodriguez*, 497 U.S. at 188.

The unusual circumstances of the stop, the contraband found in Gilbert's car, her pending report to federal prison, her obvious need to deflect attention from her newest crime, and her haste in "cooperating," all strongly demanded caution. In addition, the arresting officer testified that there was something "odd" when Gilbert responded to his question about cocaine by saying she was living in Lake City.[25] But we need not determine whether the officers' initial belief in Gilbert's authority was reasonable, because once at the apartment door, Gilbert was unable to produce a key.

▮▮ Access and permission to enter are the hallmarks of common authority.[26] Possession of a key is a strong indication of access and permission to enter, and that the third party exercises control over the premises for most purposes. In the seminal case discussed above, *Rodriguez*, the defendant's girl friend, who had lived with him until a month before and told officers she still lived there, unlocked the door with her key and gave officers permission to enter.[27] In another case by the same name, *United States v. Rodriguez*, the Seventh Circuit held the defendant's wife's possession of a key to the premises was sufficient to give her apparent authority, even though her estrangement from her husband may have deprived her of actual authority.[28] While we have not attempted an exhaustive review of all consent cases, the State has not cited (and we have been unable to discover) a single case holding a third party's consent effective where the third party had no means of access.[29]

---

[25] RP (Mar. 1, 2000) at 12.

[26] *See State v. Kieffer*, 217 Wis. 2d 531, 577 N.W.2d 352, 360 (1998) (where defendant had no key to room and police knew he always knocked before entering, it was not reasonable to believe that he had authority to consent to search).

[27] *Rodriguez*, 497 U.S. at 180. Because the trial court had not considered the question, the court remanded for a determination as to whether the officers' belief in the girl friend's authority was reasonable. *Rodriguez*, 497 U.S. at 189.

[28] 888 F.2d 519, 522-23 (7th Cir. 1989).

[29] *See United States v. Yarbrough*, 852 F.2d 1522, 1534 (9th Cir. 1988) (party

We do not hold that inability to gain immediate access necessarily defeats apparent authority. But given the other circumstances here, Gilbert's lack of a key should have alerted the police to the necessity of further inquiry. We hold it was not objectively reasonable for police to believe that Gilbert had authority to consent to a search of Holmes' apartment. The initial entry was therefore unlawful under *Ferrier*, and Holmes' later consent was ineffective to validate the search. The trial court erred in failing to suppress the evidence.

Reversed.

Cox and APPELWICK, JJ., concur.

who has key to the premises and access throughout the residence can give valid consent to search); *United States v. Baswell*, 792 F.2d 755, 759 (8th Cir. 1986) (evidence that quasi-caretaker had key and responsibility to look out for the property sufficient to uphold finding of implied authority to consent to search of vacation home); *State v. Hawkins*, 131 Idaho 396, 958 P.2d 22, 27-28 (Ct. App. 1998) (evidence that sister was owner of motor home and her boyfriend had a key was sufficient for reasonable belief that they had authority to consent to search); *State v. McCaughey*, 127 Idaho 669, 904 P.2d 939, 944 (1995) (police had reasonable belief in apparent authority when third party was married to defendant, lived on the premises at the time of search, and produced keys to open door); *see also United States v. Ramirez*, 115 F. Supp. 2d 401, 408 (S.D.N.Y. 2000) (third party opened the door to the apartment and invited the officers inside, showing that she had both access to the area and permission to enter).