69 P.3d 362 (2003)
116 Wash.App. 955
STATE of Washington, Respondent,
v.
Aaron Edwards RISON, Appellant.
No. 20983-1-III.
Court of Appeals of Washington, Division 3, Panel One.
May 22, 2003.
*363 John Snyder, Steven P. Martonick, Snyder Law Offices, Pullman, WA, for Appellant.
Denis P. Tracy, Prosecuting Attorney, Colfax, WA, for Respondent.
SWEENEY, J.
An apartment tenant has authority to consent to a search of his apartment. State v. Mathe, 102 Wash.2d 537, 540-41, 688 P.2d 859 (1984). He has no authority, however, to consent to search another's property. See, e.g., State v. Holmes, 108 Wash.App. 511, 518-19, 31 P.3d 716 (2001). Here, the tenant consented to a police search of his apartment. While doing so, the police also searched a guest's eyeglass case. The guest, Aaron Rison, did not authorize that search. We therefore reverse the trial judge's order denying Mr. Rison's motion to suppress the drugs found in the glasses case, and remand.

FACTS
Officer Matthew Burkett investigated a noise complaint at Boulder Creek Apartments. He went to a second apartment where he also heard noise. Mr. Rison answered the door. Officer Burkett smelled marijuana. Mr. Rison was a guest in the apartment. Officer Burkett read the tenant, Thomas Farrell, complete "Ferrier warnings."[1] Mr. Farrell gave Officer Burkett permission to search the apartment. Officer Burkett called for backup.
*364 Four to seven people occupied the apartment, including Mr. Farrell and Mr. Rison. Police required all of the occupants to leave. They found an eyeglass case belonging to Mr. Rison which contained what was ultimately determined to be psilocin/psilocybin (mushrooms). The eyeglass case is not described in any detailexcept it was black and it was closed. Clerk's Papers (CP) at 26, 35.
Mr. Rison approached Officer Mike Sontgerath (one of the backup officers) outside of the apartment while the search was underway inside. He told Officer Sontgerath that there were illegal mushrooms in a black case in the apartment and that they were his. Officer Sontgerath told Officer Burkett of Mr. Rison's comments about the mushrooms, but only after the search. Officer Burkett gave Mr. Rison his Miranda[2] warnings. Mr. Rison then admitted that the mushrooms were his.
The State charged Mr. Rison with possession of psilocin/psilocybin ("mushrooms"). Mr. Rison moved to suppress the mushrooms. The court concluded that Mr. Rison's consent was not required for a valid search of his eyeglass case because Mr. Farrell, the tenant, gave a valid (and unconditional) consent to search the apartment. And it is this ruling which generates the issue before us.
The court denied a motion for reconsideration concluding that Mr. Farrell's consent to search was unlimited. And as a weekend guest, Mr. Rison had no right to challenge or limit that consent.
The court then convicted him as charged in a bench trial on stipulated facts.

DISCUSSION
The legal question here is straightforward. Does a tenant's consent to search his apartment authorize police to search a closed container found in the apartment owned by a guest rather than the tenant? We conclude that the consent of the tenant does not extend to the closed container of a guest.
STANDARD OF REVIEW
The trial court's conclusion here that the tenant's general consent to search the apartment extends to the closed container of the guest raises a question of law which we review de novo. State v. Freigang, 115 Wash.App. 496, 501, 61 P.3d 343 (2002).
EXPECTATION OF PRIVACY
First, Mr. Rison had a legitimate expectation of privacy as a guest in Mr. Farrell's home. See Minnesota v. Carter, 525 U.S. 83, 89, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (holding that an overnight guest has a legitimate expectation of privacy in the host's home that society is prepared to recognize as reasonable); State v. Magneson, 107 Wash.App. 221, 225, 26 P.3d 986, review denied, 145 Wash.2d 1013, 37 P.3d 291 (2001). "A container which can support a reasonable expectation of privacy may not be searched, even on probable cause, without a warrant." United States v. Jacobsen, 466 U.S. 109, 120 n. 17, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (citing United States v. Ross, 456 U.S. 798, 809-12, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)). Whether an expectation of privacy gives rise to Fourth Amendment protection presents two questions:
First, we ask whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that "he [sought] to preserve [something] as private." ... Second, we inquire whether the individual's expectation of privacy is "one that society is prepared to recognize as reasonable."
Bond v. United States, 529 U.S. 334, 338, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000) (quoting Smith v. Maryland, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)).
This was a closed container. Mr. Rison kept it with him in the same room. The contents of the case then were not accessible to the general public. And Mr. Rison's expectation of privacy was not diminished simply because other guests might have had access. State v. Jones, 68 Wash.App. 843, 851, 845 P.2d 1358 (1993). Mr. Rison would expectreasonably, we believethat others would not open the container, without his *365 consent, particularly if he were present. This is especially true for the typical eyeglass case, i.e., one shaped to hold eyeglasses.
Second, "[p]urses, briefcases, and luggage constitute traditional repositories of personal belongings protected under the Fourth Amendment." State v. Kealey, 80 Wash.App. 162, 170, 907 P.2d 319 (1995) (citing Arkansas v. Sanders, 442 U.S. 753, 762, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979)).[3] A closed eyeglass case is similar. The case serves "as a repository for personal, private effects" when one wishes to carry them. Sanders, 442 U.S. at 762 n. 9, 99 S.Ct. 2586, 61 L.Ed.2d 235. The eyeglass case here is, then, associated with an expectation of privacy and is protected by the Fourth Amendment. See State v. Boland, 115 Wash.2d 571, 800 P.2d 1112 (1990) (warrantless search and seizure of the contents of defendant's closed receptacle outside his home was an unreasonable intrusion into his private affairs).
And Mr. Rison did nothing to defeat his expectation of privacy. He had possession of the case within the room and did not relinquish control over it. Instead, police removed him from the apartment.
Both the Fourth Amendment and article I, section 7 of the Washington State Constitution prohibit unreasonable searches and seizures. State v. Davis, 86 Wash.App. 414, 420, 937 P.2d 1110 (1997). The protections against unreasonable searches and seizures are personal. State v. Vy Thang, 145 Wash.2d 630, 638, 41 P.3d 1159 (2002). Mr. Rison has established the personal right of privacy necessary to challenge this search. See id.
AUTHORITY TO CONSENT
Actual Authority. Next, a warrantless search is valid if a person with authority consents to it. State v. Mathe, 102 Wash.2d 537, 541, 688 P.2d 859 (1984). And actual authority requires a sufficient relationship to or "mutual use of the property by persons generally having joint access or control for most purposes." United States v. Matlock, 415 U.S. 164, 171 & n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Mr. Farrell did not jointly own, use, possess, or control Mr. Rison's eyeglass case. Mr. Farrell did not then have actual authority to consent to a search of Mr. Rison's eyeglass case.
Apparent Authority. The next question is whether a consent search can be grounded in Mr. Farrell's apparent authority to permit one. See Illinois v. Rodriguez, 497 U.S. 177, 188-89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).
The Fourth Amendment is satisfied by consent given by one who appears to have authority. State v. Holmes, 108 Wash.App. 511, 518-19, 31 P.3d 716 (2001) (citing Rodriguez, 497 U.S. at 186, 110 S.Ct. 2793, 111 L.Ed.2d 148). That is as long as the police have a reasonable belief in the authority of the person giving consent. Id. at 519, 110 S.Ct. 2793, 111 L.Ed.2d 148 (citing Rodriguez, 497 U.S. at 186, 110 S.Ct. 2793, 111 L.Ed.2d 148).
The standard for whether officers reasonably believe in the authority of a third party to consent is objective. Id. The relevant inquiry is whether "`the facts available to the officer at the moment'" would justify the belief in a person of reasonable caution that the consenting party had authority. Id. (quoting Rodriguez, 497 U.S. at 188, 110 S.Ct. 2793, 111 L.Ed.2d 148).
Here, four to seven people were in the room when the officer came to the door. He ordered them to leave. He did not instruct them to remove their personal property. Nor did he ask for their consent to search their personal property. Under these circumstances, the tenant's consent did not then include a closed container belonging to a *366 guest. First, it was likely that the case belonged to someone besides Mr. Farrell. Second, Mr. Farrell did not have joint control over the closed containeran eyeglass case.
Moreover, apparent authority requires that police make reasonable inquiries when they find themselves in ambiguous circumstances. Holmes, 108 Wash.App. at 519, 31 P.3d 716 (citing WAYNE R. LAFAVE, SEARCH AND SEIZURE § 8.3(g), at 747 (3d ed.1996)).
Police here did not ask about ownership before opening the case. The officer easily could have and should have requested and obtained the defendant's consent "when confronted with [the defendant's] presence." State v. Leach, 113 Wash.2d 735, 744, 782 P.2d 1035 (1989).
The State asserts that Mr. Rison waived his Fourth Amendment rights because he did not attempt to limit the scope of Mr. Farrell's consent or otherwise object to the search of his belongings. But consent may not reasonably be implied by one's silence or failure to object when the officer did not expressly or impliedly ask him for consent to search. United States v. Jaras, 86 F.3d 383, 390 (5th Cir.1996); see also State v. Browning, 67 Wash.App. 93, 98, 834 P.2d 84 (1992) (mere acquiescence to an officer's claim of authority to intrude into a constitutionally protected area does not satisfy State's burden of proving consent was free and voluntary).
The State also argues that Mr. Farrell could have and/or should have limited the scope of the search in order to protect Mr. Rison's privacy. But Mr. Farrell did not have a privacy interest in the eyeglass case to assert in the first place. His waiver of Fourth Amendment rights is then not relevant. See Vy Thang, 145 Wash.2d at 638, 41 P.3d 1159.

HOLDING
The conviction is reversed and the case remanded.
I CONCUR: KATO, J.
BROWN, C.J., dissenting.
Aaron E. Rison does not dispute his host's valid consent to a "knock and talk" search under State v. Ferrier, 136 Wash.2d 103, 960 P.2d 927 (1998). Therefore, Mr. Rison cannot rationally argue an invalid police discovery of an apparently generic eyeglass case located on the living room coffee table, a common area of the host's apartment. Necessarily, Mr. Rison focuses on whether the police had a right to open and search the eyeglass case, once discovered.
Here, nothing suggests the eyeglass case was identifiable to Mr. Rison or that he was prevented from taking his personal property with him when he was asked to leave the apartment. Significantly, before Mr. Rison's knowledge of any discovery or search of the eyeglass case, and while the apartment search was still in progress, Mr. Rison volunteered to Officer Mike Sontgerath he had left a black eyeglass case containing contraband in the apartment. After the search was conducted, Officer Sontgerath told Officer Matthew Burkett about Mr. Rison's admissions. Following warnings under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Mr. Rison admitted the contraband in the eyeglass case was his. The statements are unchallenged.
While it is uncertain whether the eyeglass case was actually discovered and searched prior to Mr. Rison's admissions, it is clear that until Mr. Rison's incriminating statements no specific connection existed between the eyeglass case, the contraband, and Mr. Rison. Given these circumstances, the trial court should be affirmed for two independent reasons.
First, Mr. Rison gave unchallenged and untainted incriminating statements supporting his conviction. Initially, speculating it might be discovered, Mr. Rison voluntarily and preemptively told Officer Sontgerath he had left his black eyeglass case containing contraband in the apartment. Likely, this was done to protect his friends and to take responsibility for the contraband he anticipated might be discovered. In any event, by volunteering this information Mr. Rison effectively consented to retrieving and searching the eyeglass case. Next, Mr. Rison after *367 Miranda warnings confirmed the contraband in the black eyeglass case shown to him by Officer Burkett was his. This evidence independently supports conviction.
Second, Mr. Rison incorrectly challenges the search of the eyeglass case during the Ferrier consent search. Mr. Farrell did not limit the scope of the consensual search at any time. The record does not indicate the persons present were instructed to leave personal items behind when they were asked to step outside. The generic eyeglass case was discovered on the coffee table in the living room, a common area of the apartment. Assuming Mr. Rison was a guest, the tenant host certainly can consent to the search of common areas, even assuming limits related to guest areas as argued by Mr. Rison. See, e.g., State v. Rodriguez, 65 Wash.App. 409, 414, 828 P.2d 636 (1992).
"It is clear that persons who do not own an item of property, but who maintain common authority over the residence in which the property is located, can consent to the seizure and removal of the item from the premises by law enforcement officers if the item is suspected to be evidence of a crime." State v. Cotten, 75 Wash.App. 669, 685, 879 P.2d 971 (1994). "[C]onsent to search by a host is always effective against a guest within the common areas of the premises." State v. Vy Thang, 145 Wash.2d 630, 638-39, 41 P.3d 1159 (2002). Here, Mr. Rison assumed the risk that his host would consent to areas of joint access or control.
Regarding the search of personal items, "[a] general and unqualified consent to search an area for particular items permits a search of personal property within the area in which the material could be concealed." State v. Mueller, 63 Wash.App. 720, 722, 821 P.2d 1267 (1992) (citing State v. Jensen, 44 Wash.App. 485, 723 P.2d 443 (1986)). Mr. Rison cites State v. Cole, 31 Wash.App. 501, 643 P.2d 675 (1982) for the proposition that a third party cannot consent to a search of another's personal property. Cole is distinguishable. Cole involved a vehicle search where the driver limited the search by expressly informing the police the suitcases in the trunk were not his. Cole, 31 Wash.App. at 502, 643 P.2d 675. Mr. Farrell made no such limitation. The police could reasonably have assumed the eyeglass case was Mr. Farrell's when they searched. It was reasonable to search the case as it was possible illegal narcotics were concealed in it.
Moreover, because of the generic nature of the eyeglass case, it could not be readily identified with any particular person. Thus, contrary to Mr. Rison's argument it would have been impossible to know whether the eyeglass case belonged to the host or to any guest. Thus, this case is unlike those involving personal items clearly belonging to one other than the consenting or arrested party such as State v. Parker, 139 Wash.2d 486, 987 P.2d 73 (1999). Additionally, this case is unlike State v. Holmes, 108 Wash.App. 511, 516, 31 P.3d 716 (2001) where the Ferrier consent was ruled invalid and the remaining third party consent came from one without proper common authority. Lastly, the eyeglass case does not fit into the usual locked or closed container analysis.
In my view, the trial court did not err in denying Mr. Rison's request to suppress the evidence inside the eyeglass case. Mr. Rison's disclosure to Officer Sontgerath can be seen not only as an admission, but as a request to secure his eyeglass case from the belongings of others who were present in the apartment. In this sense, Mr. Rison's actions indicated consent to search the eyeglass case to confirm his assertions. On this last point, Mr. Rison's weekend guest status is irrelevant.
Accordingly, I respectfully dissent.
NOTES
[1] See State v. Ferrier, 136 Wash.2d 103, 960 P.2d 927 (1998) (police must inform person from whom consent is sought of the right to refuse consent, revoke consent at any time, and to limit scope of consent).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Courts have found an expectation of privacy in a wide variety of containers. See State v. Cole, 31 Wash.App. 501, 506 n. 2, 643 P.2d 675 (1982) (citing United States v. Bella, 605 F.2d 160 (5th Cir.1979) (guitar case); United States v. Gooch, 603 F.2d 122 (10th Cir.1979) (briefcase); People v. Dalton, 24 Cal.3d 850, 598 P.2d 467, 157 Cal.Rptr. 497 (1979) (leather box, small metal box, and tool box); Liles v. Florida, 375 So.2d 1094 (Fla.Dist.Ct.App.1979) (satchel); People v. Bayles, 76 Ill.App.3d 843, 32 Ill.Dec. 433, 395 N.E.2d 663 (1979) (cloth whiskey bag), aff'd, 82 Ill.2d 128, 44 Ill.Dec. 880, 411 N.E.2d 1346 (1980); Commonwealth v. Moon, 8 Mass.App. 375, 394 N.E.2d 984 (1979) (wallet), aff'd, 380 Mass. 751, 405 N.E.2d 947 (1980)).