# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Filed
Washington State
Court of Appeals
Division Two

April 4, 2023

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56081-0-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| BRADLEY RYAN GIBERSON, | |
| Appellant. | |

MAXA, P.J. – Bradley Giberson appeals his conviction for possession of heroin with intent to deliver, arguing that the trial court erred by denying his motion to suppress drug evidence. Giberson's conviction arose out of an incident where law enforcement officers searched plastic grocery bags belonging to Giberson in a motel room after receiving the consent of the room's occupant to search the room. One of the bags contained heroin and a digital scale.

We hold that (1) Giberson had automatic standing to challenge the search and (2) the search of the grocery bags was unlawful. Accordingly, we reverse the conviction and remand for further proceedings consistent with this opinion.

FACTS

The following facts were stipulated to by the parties and contained in findings of fact the trial court entered in its order denying the suppression motion.

On May 30, 2020, the Grays Harbor County Sheriff's Department received a tip from a confidential informant that Giberson and Ricky Dunlap, Jr., were at a motel in Monsanto for a planned drug deal. Detective Richard Ramirez detained Dunlap and Kenneth Goedker after they

No. 56081-0-II

left the motel. Goedker stated that he was the sole occupant of motel room 106, and had been residing there for approximately 10 days. He stated that Giberson and Dunlap had stopped by earlier that day. When he and Dunlap left, Giberson and a person named Ashley Hopkins remained in the room. Goedker said that there were bags in the motel room belonging to Giberson and Dunlap.

Goedker provided written consent to search room 106 at the motel. Detective Darrin King obtained the key to the room from the motel manager, who confirmed that Goedker was the only occupant in room 106 and showed King the room rental agreement.

King and Ramirez opened the door to room 106, and they saw Giberson and Hopkins sitting at a table. Both Giberson and Hopkins were detained and removed from the room, and Goedker was brought into the room. The detectives searched a bag with a shoulder strap sitting on a bed and found controlled substances and drug paraphernalia. Goedker acknowledged ownership of the bag.

The detectives then searched two plastic grocery bags on the floor next to the door. Inside one of the grocery bags they found a digital scale and two baggies containing heroin. After searching the bags, King asked Goedker if they belonged to him. Goedker denied ownership and stated that the bags belonged to Giberson and Dunlap.

The State charged Giberson with possession of heroin with the intent to deliver. Before trial, Giberson moved to suppress the evidence found in the warrantless search of the plastic grocery bags. He argued that the search was unlawful because Goedker could not give consent to search his possessions. The State countered that Goedker had authority to consent to the search of the room and that the detectives did not need Giberson's consent because he was merely a guest in the room and had no expectation of privacy.

2

No. 56081-0-II

The trial court denied the suppression motion. The court entered findings of fact as recited above. The court concluded that because Giberson was a casual guest in room 106, he did not have a legitimate expectation of privacy that would confer standing to challenge the search. And the court concluded that because Giberson was a guest, the detectives did not need his consent to search the room. Instead, Goedker had dominion and control over the property as the host of the room and could consent to the search.

The trial court tried the case on stipulated facts. The court found Giberson guilty of unlawful possession of heroin with intent to deliver. Giberson appeals his conviction.

ANALYSIS

A.     STANDARD OF REVIEW

In general, in reviewing an order on a suppression motion we determine whether substantial evidence supports the trial court's findings of fact and whether the findings support the trial court's conclusions of law. *State v. Tysyachuk*, 13 Wn. App. 2d 35, 42, 461 P.3d 403 (2020). Here, Giberson does not challenge any of the findings of fact, so they are verities on appeal. *Id.* The only question is whether the trial court properly applied the law based on those facts. We review de novo legal conclusions regarding a suppression motion. *State v. Hinton*, 179 Wn.2d 862, 867, 319 P.3d 9 (2014).

B.     AUTOMATIC STANDING TO CHALLENGE THE SEARCH

The threshold issue is whether Giberson had standing to challenge the search of his bags. Giberson argues that the trial court erred in concluding that he did not have standing because the bags were in his possession before they were searched and therefore he had automatic standing. The State does not concede standing, but it does not argue that Giberson cannot challenge the search on appeal. The State suggests that the parties and the trial court confused standing to

3

No. 56081-0-II

challenge the search with the authority to consent or object to the search. We conclude that Giberson had standing to challenge the search.

A defendant has automatic standing under article I, section 7 of the Washington State Constitution to challenge a search when (1) possession is an essential element of the charged offense and (2) the defendant was in possession of the item searched at the time of the challenged search. *State v. Peck*, 194 Wn.2d 148, 154, 449 P.3d 235 (2019).

Here, possession is an essential element of the offense of possession of heroin with intent to distribute. RCW 69.50.401(1)[1]. And the State assumes for the sake of argument that Giberson had constructive possession of the grocery bags at the time he was removed from the motel room, and does not argue that there was no constructive possession. Therefore, we hold that Giberson has automatic standing to challenge the search and the trial court erred in concluding that Giberson did not have standing.

However, the trial court also concluded that Goedker could consent to the search and that the detectives did not have to obtain consent from Giberson to search. And we can affirm on any basis supported by the record. *State v. Gudgell*, 20 Wn. App. 2d 162, 183, 499 P.3d 229 (2021). Therefore, we must address whether the search was lawful.

C.     LAWFULNESS OF SEARCH

Giberson argues that the trial court erred in denying his suppression motion because Goedker did not have the authority to consent to the search of his grocery bags. The State argues that Goedker's consent to search the room was sufficient. We agree with Giberson.

---

[1] RCW 69.50.401 has been amended since the events of this case transpired. Because these amendments do not impact the statutory language relied on in this opinion, we refer to the current statute.

No. 56081-0-II

1.    Consent to Search

Warrantless searches are per se unlawful under article I, section 7 of the Washington Constitution and the Fourth Amendment to the United States Constitution unless they fall under a recognized exception.  *State v. Vanhollebeke*, 190 Wn.2d 315, 322, 412 P.3d 1274 (2017).  Valid consent is an exception allowing for a warrantless search.  *Id.*

Under the common authority rule, a person with equal control over premises shared with another person has authority to grant consent for law enforcement to search the premises as long as the other person is absent.  *State v. Morse*, 156 Wn.2d 1, 13, 123 P.3d 832 (2005).  If the other person with equal control is present, law enforcement must obtain that person's consent to search as well.  *Id.* at 15.

The rule that law enforcement must also obtain the consent of a person who is present does not apply to a person who does not possess common authority over the premises.  *State v. Thompson*, 151 Wn.2d 793, 806-07, 92 P.3d 228 (2004).  Specifically, "consent to search by a host is always effective against a guest within the common areas of the premises."  *State v. Thang*, 145 Wn.2d 630, 638-39, 41 P.3d 1159 (2002); *see also State v. Libero*, 168 Wn. App. 612, 618-19, 277 P.3d 708 (2012).

Under these rules, an apartment tenant has the authority to consent to a search of the apartment even if guests are present.  *State v. Rison*, 116 Wn. App. 955, 957, 69 P.3d 362 (2003).  The same rule necessarily applies to the tenant of a motel room.  *Cf. State v. Davis*, 86 Wn. App. 414, 419, 937 P.2d 1110 (1997) (treating a motel guest the same as a renter of a private residence with regard to the expectation of privacy).

Here, Giberson was a guest in Goedker's motel room.  As a result, Goedker as the person renting the room had authority to give consent for law enforcement to search the room.  *See*

5

No. 56081-0-II

*Thang*, 145 Wn.2d at 638-39. And even though Giberson was present, because he was a guest and not a co-occupant, law enforcement was not required to obtain his consent to search the room. *See Thompson*, 151 Wn.2d at 806-07.

> 2.    Scope of Consent

Giberson argues that even though the officers received Goedker's consent to search the motel room, Goedker could not consent to search Giberson's grocery bags inside the room. We agree.

Consent to search an area does not necessarily provide authorization to search belongings of a third person inside the area. *See Rison*, 116 Wn. App. at 960-61. In *Rison*, the court held that an apartment tenant does not have authority to consent to the search of a guest's closed container inside the apartment. *Id.* at 957, 960-61. In that case, law enforcement searched the eyeglass case of a guest after the tenant gave permission to search the apartment and after the guest was required to leave. *Id.* at 958. The court held that the tenant did not have actual authority to consent to the search of the eyeglass case because the tenant "did not jointly own, use, possess, or control" the case. *Id.* at 961.[2]

This court addressed a similar issue in *State v. Hamilton*, 179 Wn. App. 870, 320 P.3d 142 (2014). In that case, a husband gave consent for officers to search a purse that his estranged wife had brought into their house. *Id.* at 876. The court held that the husband had no authority to consent to the search, particularly when the wife was present, because he "had no ownership

---

[2] In contrast, a search warrant generally allows officers to search locked containers that reasonably could contain the object of the search. *State v. Witkowski*, 3 Wn. App. 2d 318, 326-28, 333-38, 415 P.3d 639 (2018). This rule would apply to the search of grocery bags that might contain the object of the search. But the officers here did not have a warrant.

6

No. 56081-0-II

or possessory interest in the purse, other than the fact that it had been left in his house." *Id.* at 886-87.

Here, Goedker did not own, possess, or control Giberson's grocery bags. Therefore, under *Rison* and *Hamilton*, he did not have authority to consent to the search of those bags.

The State argues that the grocery bags were not readily identifiable as belonging to someone other than Goedker such that the scope of Goedker's consent would be limited. But the trial court entered an unchallenged finding of fact that when Goedker was first detained, he told Ramirez that "there were bags in the room" that belonged to Giberson and Dunlap. Clerk's Papers at 72. Therefore, King and Ramirez had reason to know that Giberson owned the grocery bags before they searched them. At the very least, the knowledge that Giberson owned "bags in the room" required them to inquire with Goedker – who was present – about ownership of the bags before searching it. *See State v. Holmes*, 108 Wn. App. 511, 519, 521, 31 P.3d 716 (2001) (requiring officers to inquire further when it was unclear that a person giving consent to search had authority to do so).

The State also quotes the following statement from *State v. Cotten*: "It is clear that persons who do not own an item of property, but, who maintain common authority over the residence in which the property is located, can consent to the seizure and removal of the item from the premises by law enforcement officers if the item is suspected to be evidence of a crime." 75 Wn. App. 669, 685, 879 P.2d 971 (1994). But in that case, the shotgun seized was in plain sight on the premises of the person giving consent. *Id.* at 675-76. *Cotten* did not address whether the premises owner could give consent for officers to open and search bags belonging to another that may contain evidence of a crime.

We conclude that the officers did not have consent to search Giberson's grocery bags.

7

No. 56081-0-II

### 3. Reasonable Expectation of Privacy

Even if the officers did not have consent to search Giberson's grocery bags, a search is not unconstitutional unless the defendant demonstrates that they had a reasonable expectation of privacy in the item searched. *Hamilton*, 179 Wn. App. at 882. This involves a two-part test. *State v. Evans*, 159 Wn.2d 402, 409, 150 P.3d 105 (2007). The defendant must show that (1) he or she had an " 'actual (subjective) expectation of privacy by seeking to preserve something as private,' " and (2) society recognizes that expectation as reasonable. *Id.* at 409 (quoting *State v. Kealey*, 80 Wn. App. 162, 168, 907 P.2d 319 (1995)).

Here, Giberson clearly sought to preserve as private the drugs and digital scale by placing them in his grocery bag. The question is whether that expectation of privacy was reasonable.

Courts have found a reasonable expectation of privacy of various "traditional repositories of personal belongings." *Kealey*, 80 Wn. App. at 170. Such items include a purse, *Hamilton*, 179 Wn. App. at 882; a closed eyeglass case, *Rison*, 116 Wn. App. at 960-61; a zipped shaving kit bag, *State v. Wisdom* 187 Wn. App. 652, 657, 670-71, 349 P.3d 953 (2015); a closed and locked briefcase, *Evans*, 159 Wn.2d at 409; and luggage, *State v. Surge*, 160 Wn.2d 65, 75, 156 P.3d 208 (2007). More generally, an expectation of privacy may exist for " 'closed packages, bags, and containers.' " *Wisdom* 187 Wn. App. at 670 (quoting *California v. Acevedo*, 500 U.S. 565, 571, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991)).

The court in *Rison* addressed whether a guest in an apartment has a reasonable expectation of privacy in their eyeglass case when the apartment tenant has consented to a search of the premises. 116 Wn. App. at 960-61. The court noted that the guest could reasonably expect that others would not open his closed container without his consent. *Id.* at 960. Therefore, the

8

No. 56081-0-II

guest's eyeglass case was associated with the expectation of privacy and was protected by the Fourth Amendment. *Id.* at 961.

The question here is whether Giberson had a reasonable expectation of privacy in his grocery bags. The grocery bags cannot be characterized as *closed* containers like some of the types of containers discussed above, which were found to encompass a reasonable expectation of privacy. There is no indication that Giberson tied the bags shut. Therefore, cases like *Rison* and *Wisdom* are not directly controlling.[3]

However, the fact that the grocery bags were not completely "closed" is not dispositive. Grocery bags can be characterized as "traditional repositories of personal belongings." *Kealey*, 80 Wn. App. at 170. People certainly put personal grocery items and other personal items obtained in a grocery store like prescription medications in such bags. And common experience tells us that people also use grocery bags to carry other personal items. For example, this may be true for people such as those experiencing homelessness who may not have space for their personal items. As in *Rison*, Giberson reasonably could expect that others would not search his grocery bags without his consent. *See* 116 Wn. App. at 960. Therefore, we conclude that Giberson had a reasonable expectation of privacy in his grocery bags.

Finally, we note that because grocery bags are not completely closed, officers may be able to seize drugs or other contraband that is in plain view in grocery bags. *See State v. Morgan*, 193 Wn.2d 365, 370-71, 440 P.3d 136 (2019) (stating the elements of the plain view

---

[3] The trial court entered a finding a fact after the stipulated facts trial that the heroin was found in a zippered glasses case that the officers unzipped. *Rison* may well be controlling in that situation. However, the findings of fact after the suppression hearing do not mention a zippered glasses case, and therefore we cannot consider the trial finding. In addition, neither party addresses the glasses case in evaluating the suppression hearing ruling.

9

No. 56081-0-II

doctrine). But there was no finding that the drugs and digital scale that the officers discovered in their search of Giberson's grocery bags was in plain view.

4.  Summary

We conclude that Goedker's authority to give consent to search his hotel room did not extend to the search of Giberson's grocery bags and that Giberson had a reasonable expectation of privacy in those bags. Therefore, we hold that the trial court erred in failing to suppress the heroin and digital scale found in the search of the grocery bags.

CONCLUSION

We reverse Giberson's conviction and remand for further proceedings consistent with this opinion.

_____
MAXA, P.J.

We concur:

_____
LEE, J.

_____
CHE, J.

10