# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00117-CR

**Tajay Stephens, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
NO. D-1-DC-16-301543, HONORABLE TAMARA NEEDLES, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

After the trial court denied his motion to suppress evidence, a jury found appellant Tajay Stephens guilty of possession with intent to deliver a penalty group 2-A controlled substance (synthetic marihuana) in an amount of four grams or more but less than 400 grams, a first-degree felony. *See* Tex. Health & Safety Code § 481.113(d). The jury assessed punishment at five years' imprisonment. In two appellate issues, Stephens contends that he received ineffective assistance of counsel and that the judgment should be reformed to reflect the offense for which he was convicted. We will modify the trial court's judgment of conviction and affirm the judgment as modified.

## BACKGROUND[1]

The indictment against Stephens alleged that he possessed a controlled substance with intent to deliver. Before trial, Stephens filed a motion to suppress evidence. At the hearing on the motion to suppress, Officer Tracy Zimmerman with the Austin Police Department testified that he was patrolling downtown Austin in May 2016 when he noticed unusual activity happening early in the morning near the Austin Resource Center for the Homeless (ARCH). Officer Zimmerman testified, "There's a large well-documented percentage of criminal activity that happens around the ARCH." Suspecting criminal activity, Officer Zimmerman went to the "HALO camera room," where he was able to view the suspicious activity using "a system of cameras downtown." According to Officer Zimmerman, he "saw a group of males" that "were working in concert and they were making numerous hand-to-hand transactions with random pedestrians that were walking up." Officer Zimmerman viewed this activity for "[a]bout an hour."

Officer Zimmerman further testified that he suspected the group was distributing a category of drug known as "K2," or synthetic marihuana, because K2 use was "one of the big issues that we have down at the ARCH" and because people from the ARCH are sometimes hospitalized after using K2. Officer Zimmerman testified that he watched the group of males handling cigarillos that had been torn open and had the tobacco removed. According to Officer Zimmerman, the group was resealing the cigarillos and distributing them to pedestrians. Officer Zimmerman identified Stephens as one of the men he saw in the video and testified that he believed Stephens was in charge

---

[1] The facts recited in this opinion are taken from the testimony and exhibits admitted at the hearing on the motion to suppress and at trial.

of the operation. Officer Zimmerman testified that there was a backpack near the group and that Stephens went back and forth to the backpack during the hand-to-hand exchanges, reaching into the backpack "on numerous occasions." Officer Zimmerman further testified that he contacted other officers who approached the group on the street. These officers seized the backpack and placed it on the hood of the patrol car. The officers removed items from the backpack and then returned the backpack to Stephens.

In addition, Officer Zimmerman testified that officers arrested Stephens at the scene for outstanding warrants. He was later arrested for delivering synthetic marihuana. On cross-examination, Officer Zimmerman admitted that he did not "know for certain what was being transacted" by watching through the HALO system but affirmed that the activity was "reasonably suspicious."

Stephens's trial counsel argued at the hearing that Stephens's arrest was illegal. The trial court denied the motion to suppress, and the case went to trial. At trial, Officer Zimmerman and other officers testified to the events partially described above. The jury also heard testimony that later tests showed that the backpack contained controlled substances. Stephens was convicted and sentenced, and this appeal followed.

## DISCUSSION

**Ineffective Assistance of Counsel**

In his first appellate issue, Stephens contends that he received ineffective assistance of counsel in that his trial counsel did not move to suppress the contents of the backpack on the ground that the warrantless search of the backpack violated Stephens's Fourth Amendment rights.

To prevail on his claim of ineffective assistance of counsel, Stephens must demonstrate by a preponderance of the evidence both deficient performance by counsel and that he suffered prejudice as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). In addition, as the Texas Court of Criminal Appeals has explained,

> Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped. This is true with regard to the question of deficient performance—in which counsel's conduct is reviewed with great deference, without the distorting effects of hindsight—where counsel's reasons for failing to do something do not appear in the record. We have said that trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it.

*Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (cleaned up).

The failure of Stephens's trial counsel to challenge the seizure of the backpack in the motion to suppress is not per se ineffective assistance of counsel. *See Harris v. State*, No. 01-11-00415-CR, 2014 WL 1912539, at *5 (Tex. App.—Houston [1st Dist.] May 13, 2014, no pet.) (mem. op., not designated for publication); *Hollis v. State*, 219 S.W.3d 446, 456 (Tex. App.—Austin 2007, no pet.). This is because "[c]ounsel is not required to engage in the filing of futile motions." *Hollis*, 219 S.W.3d at 456 (citing *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991)). Therefore, Stephens must show that the result of the proceedings would have been different if his trial counsel had made the argument he now raises—that is, that the trial court would have granted the motion to suppress and that the remaining evidence would have been insufficient to obtain a conviction. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App.

4

1998) (per curiam) ("[T]he appellant was still obliged to prove that a motion to suppress would have been granted in order to satisfy *Strickland*."); *id.* ("To prevail on his claim of ineffective assistance of counsel the appellant had the burden to develop facts and details of the search sufficient to conclude that the search was invalid."); *see also Pratt v. State*, No. 02-16-00395-CR, 2018 WL 2054623, at *8 (Tex. App.—Fort Worth May 3, 2018, no pet. h.) (mem. op., not designated for publication); *Martinez v. State*, No. 08-14-00130-CR, 2016 WL 4447660, at *4 (Tex. App.—El Paso Aug. 24, 2016, pet. ref'd) (not designated for publication), *cert. denied*, 137 S. Ct. 2170 (2017); *Ray v. State*, No. 14-14-00347-CR, 2015 WL 4366108, at *4 (Tex. App.—Houston [14th Dist.] July 16, 2015, no pet.) (mem. op., not designated for publication); *Harris*, 2014 WL 1912539, at *5; *Hollis*, 219 S.W.3d at 456.

Here, the record is silent as to trial counsel's reasons for not challenging the search of the backpack in the motion to suppress, and Stephens has not shown that his trial counsel's conduct was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed*, 187 S.W.3d at 392. If Stephens's counsel had challenged the search of the backpack in the motion to suppress, the State may have presented additional evidence in response. *See Richard v. State*, No. 03-12-00222-CR, 2012 WL 3793416, at *2 (Tex. App.—Austin Aug. 31, 2012, no pet.) (mem. op., not designated for publication) ("Nothing in this record shows what evidence the State might have offered in response to a motion to suppress if it had been filed."); *Berry v. State*, Nos. 05-05-01104-CR, 05-05-01105-CR, 05-05-01106-CR, 2006 WL 1976942, at *2 (Tex. App.—Dallas July 17, 2006, pet. ref'd) (mem. op., not designated for publication) ("[N]o record has been developed to establish the possible reasons why defense counsel did not file a motion to

suppress the drugs. Nor does the record establish what evidence the State would have presented had counsel filed a motion to suppress . . . . Thus, Berry cannot overcome the strong presumption of effective assistance of counsel.").

In addition, we are not persuaded that the trial court would have granted the motion to suppress. The trial court could have concluded, for example, that the search of the backpack was a lawful search incident to arrest. Stephens argues that the search was not lawfully performed incident to arrest because "the arrest occurred after officers seized Mr. Stephens' backpack and removed it from his immediate control. Because officers safely immobilized the backpack prior to arresting Mr. Stephens, the State cannot claim that the search incident to arrest exception applies." Stephens relies heavily on the Supreme Court's opinion in *Chadwick*. *See United States v. Chadwick*, 433 U.S. 1, 13 (1977) ("With the footlocker safely immobilized, it was unreasonable to undertake the additional and greater intrusion of a search without a warrant."). However, Texas courts have read *Chadwick* narrowly, because to do otherwise would "hamstring police officers who are conducting searches incident to lawful arrests." *Carrasco v. State*, 712 S.W.2d 120, 123 (Tex. Crim. App. 1986). Accordingly, "[w]hether or not an officer has reduced luggage or other personal property not immediately associated with the person of the arrestee to his exclusive control will depend upon the totality and the exigencies of the circumstances in each case." *Id.* (cleaned up).

Therefore, the fact that officers removed the backpack from Stephens and placed it on the hood of the patrol car before searching it did not preclude them from searching the bag incident to arrest, nor is it relevant whether officers searched the backpack before or after placing Stephens under arrest. As the Texas Court of Criminal Appeals has explained,

6

If an officer has probable cause to arrest, a search incident to arrest is valid if it is conducted before a formal arrest—at least if it is immediately before the arrest. The formalities associated with arrest do not seem to matter to the Supreme Court in the search-incident-to-arrest context as long as the arrest was close in time to the search and the requisite probable cause to arrest (that justifies the arrest and search) arose before the search.

*State v. Sanchez*, 538 S.W.3d 545, 550 (Tex. Crim. App. 2017) (footnote omitted); *see State v. Ballard*, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999) ("It is irrelevant that the arrest occurs immediately before or after the search, as long as sufficient probable cause exists for the officer to arrest before the search."); *Hill v. State*, No. 13-16-00397-CR, 2017 WL 5505748, at *3 (Tex. App.—Corpus Christi Nov. 16, 2017, no pet.) (mem. op., not designated for publication) (noting that search was incident to arrest even if "appellant was not under arrest when he was searched but only detained"); *Cano v. State*, No. 03-15-00485-CR, 2017 WL 3908640, at *10 (Tex. App.—Austin Aug. 24, 2017, pet. ref'd) (mem. op., not designated for publication) ("[T]his Court has held that 'the search incident to arrest can precede the arrest' so long as the formal arrest occurs 'within the same encounter.'") (quoting *Wiede v. State*, 157 S.W.3d 87, 96 (Tex. App.—Austin 2005, pet. ref'd)); *Meiburg v. State*, 473 S.W.3d 917, 924 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Consequently, Chisolm's subsequent search of Meiburg's pocket was valid as a search incident to arrest. It is irrelevant that Meiburg was not actually arrested until after the search, because the law requires only that Chisolm had probable cause to believe that he had committed a crime.") (citation omitted); *Nugent v. State*, No. 01-12-00234-CR, 2014 WL 458998, at *5 (Tex. App.—Houston [1st Dist.] Feb. 4, 2014, pet. ref'd) (mem. op., not designated for publication) ("[A] search is still incident to an arrest for as long as the administrative process incident to the arrest and custody have

not been completed. A search may take place on the spot, at the time of arrest, or it may be conducted later when the accused arrives at the place of detention.") (cleaned up).

Here, the officers had probable cause to arrest Stephens because of the existence of his outstanding warrants and searched the backpack incident to that arrest. We also note that the video of the encounter shows that other people besides Stephens were wandering around the street near the patrol car and the officers. The officers could have reasonably been concerned that a pedestrian could access weapons or contraband from the backpack, further justifying the search.

Based on the record before us, we cannot conclude that the conduct of Stephens's trial counsel in failing to challenge the search of the backpack in the motion to suppress was "so outrageous that no competent attorney would have engaged in it," *see Goodspeed*, 187 S.W.3d at 392, nor can we conclude that Stephens has shown that the trial court would have granted the motion, *see Jackson*, 973 S.W.2d at 957. Accordingly, we cannot conclude that Stephens received ineffective assistance of counsel, and we overrule his first appellate issue.

**Modifying the Judgment**

In his second appellate issue, Stephens contends that the judgment incorrectly indicates that he manufactured a controlled substance. The State concedes this error and further asks this Court to reform the judgment to delete the reference to indazole.[2] We agree, and we therefore sustain Stephens's second issue and will modify the judgment to change the reference to

---

[2] In its appellate brief, the State explains that "appellant was convicted of possessing a controlled substance in which indazole was a core component . . . . Indazole is not the controlled substance but rather a core component of the penalty group 2-A controlled substance alleged in the indictment."

manufacturing of a controlled substance to possession of a controlled substance and to delete the reference to indazole. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993).

## CONCLUSION

We modify the trial court's judgment of conviction to change the reference to manufacturing of a controlled substance to possession of a controlled substance and to delete the reference to indazole. We affirm the judgment as modified.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Modified and, as Modified, Affirmed

Filed:   July 3, 2018

Do Not Publish